## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Alpha Latam Management, LLC, *et al.*,[1] | Case No. 21-11109 (JKS) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No. 645 & 647** |

### ORDER (I) CONFIRMING THE THIRD AMENDED
### CHAPTER 11 PLAN OF ALPHA LATAM MANAGEMENT, LLC
### AND ITS DEBTOR AFFILIATES AND (II) GRANTING RELATED RELIEF

Upon the filing by the Debtors[2] of the *Third Amended Chapter 11 Plan of Reorganization of Alpha Latam Management, LLC and its Debtor Affiliates* [Docket No. 645] (as may be modified, amended, or supplemented from time to time, the "**Plan**"), which is attached hereto as **Exhibit A**;[3] and the Court previously having approved the Disclosure Statement [Docket No. 513] and the procedures related to the solicitation of votes to accept or reject the Plan (the "**Solicitation Procedures**") in connection with the Disclosure Statement and the solicitation of acceptances and rejections of the Plan, in each case pursuant to the Disclosure Statement Order;[4] and the Debtors having served the Disclosure Statement on the holders of Claims and Equity Interests pursuant to

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's tax identification number in their applicable jurisdiction of incorporation, are as follows: Alpha Latam Management, LLC (4610); Acsa Atento S.A.S. (766-6); Alpha Capital S.A.S. (717-5); AlphaCredit Latam S.A.S. (326-5); AlphaCredit Sudamérica, S. de R.L. (72 87); AlphaDebit, S.A. de C.V. (3FI4); and Vive Créditos Kusida S.A.S. (013-4).  Alpha Latam Management, LLC's registered address is 1209 N Orange Street, Wilmington, DE 19801.  The main address of the other Debtors is Carrera 14 No. 94 – 81, Bogotá, Colombia.

[2]    Where the context requires, each capitalized term used but not otherwise defined herein shall have the meaning ascribed to such term in the Plan or the Disclosure Statement (each as defined herein), as applicable.

[3]    The terms of the Plan, as amended or modified, are incorporated into this Order as if fully set forth herein.

[4]    The "**Disclosure Statement Order**" means the *Order (I) Approving the Disclosure Statement Relating to the Chapter 11 Plan; (II) Approving the Form of Ballots and Proposed Solicitation Procedures for the Plan; (III) Approving the Solicitation Packages and Prescribing the Form and Manner of Notice and Distribution Thereof; (IV) Establishing Procedures for Voting in Connection with the Plan Confirmation Process; and (V) Scheduling a Confirmation Hearing* [Docket No. 518] entered by this Court on January 26, 2022.

the Disclosure Statement Order, *see Affidavit of Service of Solicitation Materials* [Docket No. 552] (the "**Solicitation Affidavit**"); and the Debtors having filed the documents comprising the Plan Supplement on February 18, 2022 and continuing thereafter [Docket Nos. 564, 589 & 606] (collectively, and as may be further amended or supplemented, the "**Plan Supplement**"); and the Court having considered the record in these Chapter 11 Cases, the stakeholder support for the Plan evidenced on the record, and in the *Declaration of John R. Castellano in Support of Second Amended Chapter 11 Plan of Reorganization of Alpha Latam Management, LLC and its Debtor Affiliates* [Docket No. 616] (the "**Castellano Declaration**") and in the *Preliminary Declaration of James Daloia of Prime Clerk LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Second Amended Chapter 11 Plan of Reorganization of Alpha Latam Management, LLC and its Debtor Affiliates* and the supplement thereto [Docket Nos. 615 and 628] (as may be modified, amended, or supplemented the "**Voting Report**", together with the Castellano Declaration, the "**Confirmation Declarations**"), the compromises and settlements embodied in and contemplated by the Plan, the briefs and arguments regarding confirmation of the Plan, including the *Debtors' Memorandum of Law in Support of and Omnibus Reply to Objections to Confirmation of the Second Amended Chapter 11 Plan of Alpha Latam Management, LLC and its Debtor Affiliates* [Docket No. 617] (the "**Confirmation Brief**"), the *Omnibus Response of the Ad Hoc Consortium to Plan Objections and in Support of Confirmation of the Second Amended Chapter 11 Plan of Alpha Latam Management, LLC and Its Debtor Affiliates* [Docket No. 618], objections to confirmation of the Plan, the evidence regarding confirmation of the Plan, and a hearing on confirmation of the Plan having commenced on March 11, 2022 (the "**Confirmation Hearing**"); and after due deliberation:

**THE COURT HEREBY FINDS**:[5]

I.          <u>Jurisdiction and Venue</u>.  This Court has jurisdiction over these Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012. The Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be approved and confirmed.   Venue of these proceedings and the Chapter 11 Cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court may enter a final order hereon under Article III of the United States Constitution.

II.          <u>Eligibility for Relief</u>.  The Debtors were and are entities eligible for relief under section 109 of the Bankruptcy Code.

III.          <u>Judicial Notice</u>.  This Court takes judicial notice of (and deems admitted into evidence for purposes of confirmation of the Plan) the docket of these Chapter 11 Cases maintained by the Clerk of this Court, including the related adversary proceeding filed in the Chapter 11 Cases and all pleadings and other documents on file, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the Bankruptcy Court during these Chapter 11 Cases.

IV.          <u>Plan Supplement</u>.  The Plan Supplement complies with the Bankruptcy Code and the terms of the Plan, and the filing and notice of such documents were good and proper and in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement

---

[5]        The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any of the following conclusions of law constitute findings of fact, they are adopted as such pursuant to Bankruptcy Rules 7052 and 9014.

Order, and the facts and circumstances of these Chapter 11 Cases.  No other or further notice is or will be required with respect to the Plan Supplement.  The documents (substantially in the forms included in the Plan Supplement) are integral to, part of, and incorporated by reference into, the Plan.

V.       The Plan and the various documents set forth in the Plan Supplement provide adequate and proper disclosures and means for the implementation of the Plan.

VI.       <u>Transmittal and Mailing of Materials; Notice</u>.   As evidenced by the Solicitation Affidavit and Plan Supplement Affidavits (as defined below), due, adequate, and sufficient notice of the Disclosure Statement Order, the Disclosure Statement, the Plan, the Plan Supplement, and the Confirmation Hearing, together with all deadlines for objecting to and voting to accept or reject the Plan, and any extensions thereof, have been provided in compliance with the Disclosure Statement, the Disclosure Statement Order, the Bankruptcy Code, and the Bankruptcy Rules.

VII.       Consistent with the Disclosure Statement Order, on January 28, 2022, the Debtors, through Prime Clerk LLC ("**Prime Clerk**"), caused copies of:

(a) the Solicitation Package (as defined in the Solicitation Procedures) containing the materials specified in paragraph 6 of the Disclosure Statement Order,[6] both in English and Spanish, to be transmitted to all holders of Claims in the Voting Classes entitled to vote on the Plan, *i.e.*, Claims in Classes 4a, 4b, and 4c, including with respect to Class 4b, to the Nominees (as defined in the Disclosure Statement Order), which were provided with instructions and sufficient quantities to distribute the aforementioned documents and respective ballot to the holders of Notes Claims (*See* Solicitation Affidavit [Docket No. 552] at ¶¶ 2(a)-(c) and 3(a));

---

[6]       Namely, each of the following materials in English and Spanish: (i) cover letter from the Debtors dated January 26, 2022; (ii) the Confirmation Hearing Notice (as defined below); and (iii) the applicable Ballot for each holder of Claims in the Voting Classes with return instructions and a return envelope.  Furthermore, English and Spanish versions of other relevant documents, including the Disclosure Statement and exhibits, the Plan, the Disclosure Statement Order, and the Solicitation Procedures were made available to parties in interest via the Quick Response Barcode and an USB Flash Drive.  *See* Solicitation Affidavit [Docket No. 552].

(b) the Confirmation Hearing Notice (as defined below) and Unimpaired Non-Voting Status Notice, in English and Spanish, to be served by first class mail on the holders of Claims or Equity Interests in the Unimpaired Classes, *i.e.*, Classes 1, 2, 3, and 7 (*See* Solicitation Affidavit [Docket No. 552] at ¶ 2(d));

(c) the Confirmation Hearing Notice and Impaired Non-Voting Status Notice, in English and Spanish, to be served by first class mail on the holders of Claims or Equity Interests in the Impaired Non-Voting Classes *i.e.*, Classes 4d, 5, and 6 (*See* Solicitation Affidavit [Docket No. 552] at ¶ 2(e)); and

(d) the Solicitation Package (without a ballot), in English and Spanish, to be served by first class mail on the parties (or their counsel) specified in ¶ 8 of the Disclosure Statement Order (*See* Solicitation Affidavit [Docket No. 552] at ¶ 2(f)-(g)).[7]

VIII.    The Debtors also published the *Notice of (I) Approval of Disclosure Statement; (II) Establishment of Voting Record Date; (III) Hearing on Confirmation of the Plan; (IV) Procedures for Objecting to the Confirmation of the Plan; and (V) Procedures and Deadline for Voting on the Plan* [Docket No. 521] (the "**Confirmation Hearing Notice**") in the national edition of *The New York Times* on January 31, 2022 and a Spanish translation thereof published in *El Tiempo* in Colombia on February 2, 2022, all in compliance with the Disclosure Statement Order and Bankruptcy Rule 2002(1) and as evidenced by the *Certification of Publication* filed on February 10, 2022 [Docket No. 548].  No other or further notice is or shall be required.

IX.    Due, adequate, and sufficient notice of Executory Contracts and Unexpired Leases to be assumed by the Debtors, proposed cure amounts, the procedures for objecting thereto and resolution of disputes by the Court thereof has been given (as evidenced by the *Affidavit of Service* dated February 18, 2022 [Docket No. 563] and the *Affidavit of Service* dated March 3, 2022 [Docket No. 594]) to counterparties to the Executory Contracts and Unexpired Leases that

---

[7]    Namely, the following parties: (i) the U.S. Trustee; (ii) counsel to the DIP Note Purchasers and the Ad HocGroup; (iii) counsel to The Bank of New York Mellon, as Notes Indenture Trustee; (iv) each of the Debtors' 30 largest unsecured creditors (on a consolidated basis); (v) the Internal Revenue Service; (vi) the United States Attorney's Office for the District of Delaware; (vii) Alpha Latam, L.P., Alpha Tech Partners, LLC, AlphaCredit Tech Partners, L.P., and Clarum Capital, L.P.; (viii) any governmental authority in the United States requiring service; and (ix) any such other party entitled to receive notice pursuant to Bankruptcy Rule 2002.  *See* Solicitation Affidavit [Docket No. 552].

are identified in the Assumed Executory Contracts and Unexpired Leases Schedule (as defined below), and no other or further notice is or shall be required.

X.          As evidenced by the *Affidavit of Service Regarding Notice of Filing of Plan Supplement* dated February 22, 2022 [Docket No. 568] and supplements thereto [Docket Nos. 595 & 624] (collectively, the "**Plan Supplement Affidavits**"), due, adequate, and sufficient notice of the Plan Supplement has been provided, and no other or further notice is or shall be required.

XI.         Consistent with the Disclosure Statement Order and the Solicitation Procedures, the Debtors extended the deadline for Voting Members (as defined below) to vote to accept or reject the Plan (as extended from time to time, the "**Voting Deadline**") and provided notice thereof to the relevant parties. *See* Docket Nos. 572, 599, 620 & 621.

XII.        The Debtors also posted the Confirmation Hearing Notice, the Plan, the Disclosure Statement, the Disclosure Statement Order, the Assumed Executory Contracts and Unexpired Leases Schedule, Plan Supplement, and other relevant documents in English and Spanish electronically at the case website (*https://cases.primeclerk.com/alphalatam*).

XIII.       Based on the foregoing, all persons entitled to receive notice of the Disclosure Statement, the Plan, and the Confirmation Hearing have received proper, timely, and adequate notice in accordance with the Disclosure Statement Order, the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, and have had an opportunity to appear and be heard with respect thereto. No other or further notice is or shall be required.

XIV.        <u>Burden of Proof</u>. The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by preponderance of the evidence, which is the applicable evidentiary standard for Confirmation of the Plan.

XV.         Proposal of Plan in Good Faith.  The Plan has been proposed in good faith and not by any means forbidden by law.  In so finding, the Court has considered the totality of the circumstances of these Chapter 11 Cases.  The Plan is the result of extensive, good faith, arm's length negotiations among the Debtors and their principal constituencies.

XVI.        The Debtors' good faith is evident from the facts and record of these Chapter 11 Cases, the Disclosure Statement, the Disclosure Statement Hearing, the record of the Confirmation Hearing, the Confirmation Declarations, and all other proceedings held in these Chapter 11 Cases.  Consistent with the overriding purpose of chapter 11, the Debtors commenced these Chapter 11 Cases and proposed the Plan, with the legitimate purpose of allowing the Debtors to maximize the value of their estates for all stakeholders.

XVII.       Modifications to the Plan.  The amendments and modifications to the *Chapter 11 Plan of Alpha Latam Management, LLC and Its Debtor Affiliates* [Docket No. 512] (the "**Solicitation Plan**") since the filing thereof  comply in all respects with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, do not materially and adversely affect the treatment of any holder of a Claim or Equity Interest under the Plan without their consent, and do not require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes with respect to the Plan under section 1126 of the Bankruptcy Code.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted such Plan as modified to the extent that the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.

XVIII.      The filing of the Plan as modified and the disclosure of the modifications to the Plan on the record at or before the Confirmation Hearing constitute due, adequate, and sufficient notice of any and all such modifications.

XIX.        <u>Good Faith Solicitation</u>.  Votes for acceptance and rejection of the Plan were solicited in good faith and in compliance with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Disclosure Statement, and Disclosure Statement Order.

XX.        <u>Best Interests Test</u>.    The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.  The evidence in support of the Plan that was proffered or adduced at the Confirmation Hearing and the facts and circumstances of these Chapter 11 Cases, establish that each holder of Allowed Claims or Equity Interests in each Class will recover as much or more value under the Plan on account of such Claim or Equity Interest, as of the Effective Date, than the amount such holder would receive if the Debtors were hypothetically liquidated on the Effective Date under chapter 7 of the Bankruptcy Code.  The Liquidation Analysis (attached to the Disclosure Statement as Appendix B), including the methodology used and assumptions made therein, and the other evidence related thereto, as supplemented by any evidence proffered or adduced at or prior to the Confirmation Hearing: (a) are persuasive and credible as of the dates such evidence was prepared, presented, or proffered; (b) have not been controverted by other persuasive evidence; and (c) are based upon reasonable and sound assumptions.  The Liquidation Analysis demonstrates that recoveries under the Plan are equal or greater than they would be if the Chapter 11 Cases were converted to cases under chapter 7 of the Bankruptcy Code.  As a result, the Debtors have demonstrated that the Plan is in the best interests of the Debtors, their Estates, and holders of Claims and Equity Interests.

XXI.        <u>Voting Results</u>.  Prior to the Confirmation Hearing, the Debtors filed the Voting Report.  As set forth in the Voting Report, the procedures used to tabulate the Ballots were fair and conducted in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations.  Based upon the procedures

approved in the Disclosure Statement Order, Prime Clerk has made a determination of the validity of, and tabulation with respect to, all acceptances and rejections of the Plan by holders of Claims entitled to vote on the Plan, including the amount and number of accepting and rejecting Claims in the Voting Classes (as defined below) under the Plan. (*See* Voting Report at Exhibit 1 (the "**Voting Tabulation**").)  The Voting Tabulation sets forth the tabulation of votes on a Debtor-by-Debtor basis and demonstrates that such tabulation was conducted in accordance with the Bankruptcy Code, Bankruptcy Rules, Disclosure Statement, Disclosure Statement Order, and Plan. (*See* Voting Tabulation.)   Therefore, all votes are binding and have been properly tabulated as acceptances or rejections of the Plan.

XXII.        Article III of the Plan specifies that Claims in Class 1 (Priority Claims), Class 2 (Secured Claims), and Class 3 (Foreign Convenience Claims) are Unimpaired pursuant to sections 1124 and of the Bankruptcy Code because the Plan does not alter the legal, equitable, or contractual rights of the holders of Claims in such Classes and, therefore, such holders are conclusively presumed to accept the Plan.  Equity Interests in Class 7 (ALM Equity) (together with Classes 1, 2, 3, the "**Unimpaired Classes**") shall be Reinstated and are in a Class of Unimpaired Equity Interest whose holders are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.

XXIII.        The Plan specifies that Claims and Equity Interests in each of Class 4d (Credit Suisse Claims), Class 5 (Intercompany Claims), and Class 6 (Equity Interests) (collectively, "**Impaired Non-Voting Classes**") are entitled to no recovery under the Plan, and are therefore deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.

XXIV.        As also set forth in Article III of the Plan, the only Impaired Classes entitled to vote on the Plan pursuant to the Solicitation Procedures are: Class 4a (Other Unsecured Claims);

Class 4b (Notes Claims); and Class 4c (Funded Debt Claims) (together, the "**Voting Classes**" and each holder of a Claim in the Voting Classes, a "**Voting Member**").

XXV.         As evidenced by the Voting Report, Class 4a abstained from voting, Class 4b voted to accept the Plan, and Class 4c voted to reject the Plan.  Because the Plan has not been accepted by Class 4c and the Impaired Non-Voting Classes that are deemed to have rejected the Plan, the Debtors seek confirmation under section 1129(b), rather than section 1129(a)(8), of the Bankruptcy Code.  Although section 1129(a)(8) has not been satisfied, the Plan is confirmable pursuant to section 1129(b)(1) of the Bankruptcy Code because: (a) at least one Impaired Class voted to accept the Plan; and (b) the Plan does not discriminate unfairly and is fair and equitable.  As a result, the Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code.  After entry of this Order and upon the occurrence of the Effective Date, the Plan shall be binding upon all holders of Claims and Equity Interests, including those Voting Members that voted to reject the Plan or holders of Claims and Equity Interests that are deemed to reject the Plan.

XXVI.        The Voting Report also sets forth the number of holders of Claims that opted out of the Third Party Releases (as defined below).  (*See* Voting Report at Exhibit 3.)

XXVII.       <u>Subordinated Claims; Classification</u>.  The allowance, classification, and treatment of all Allowed Claims and Allowed Equity Interests and the respective distributions on account thereof take into account and conform to the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal, and equitable rights relating thereto.  Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right to re-classify any Allowed Claim, other than the Notes Claims, in accordance with any contractual, legal, or equitable subordination relating thereto.  Notwithstanding the foregoing, the Plan shall be without prejudice to the contractual, legal, or equitable subordination rights (if any) in favor of any

holder of any Allowed Claim and any holder of any Allowed Claim (if any) subject to any such contractual, legal, or equitable subordination shall remit any distribution on account of such Claim to which such holder's Claim is subordinated in accordance with, and to the extent required under, any applicable contractual, legal, or equitable subordination obligation.

XXVIII.      <u>Feasibility</u>.  The Plan is feasible and complies with section 1129(a)(11) of the Bankruptcy Code.  The evidence proffered or adduced at the Confirmation Hearing establishes that the Debtors[8] and the Liquidating Trust, as applicable, will each have sufficient funds available to meet its obligations under the Plan.  Furthermore, reasonable, persuasive, and credible evidence proffered or adduced at or prior to the Confirmation Hearing establishes that the Plan is feasible.  Finally, because the Plan contemplates an orderly liquidation and/or wind-down dissolution of the Debtors (except for ALM) under local laws, confirmation of the Plan is not likely to be followed by the need for further financial reorganization.

XXIX.      <u>Compromise and Settlement of Claims and Controversies</u>.  Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan (including with respect to the Ad Hoc Group Fees and Expenses and Notes Indenture Trustee Fees and Expenses) constitute good-faith compromises and settlements of all Claims and Equity Interests and controversies among the parties thereto. Payment of the Ad Hoc Group Fees and Expenses and the Notes Indenture Trustee Fees and Expenses are part of the compromises and settlements embodied in and contemplated by the Plan. The compromises or settlements in the Plan represent a sound exercise of the Debtors' business

---

[8] For the avoidance of doubt, "Debtors" as used in this Order or the Plan shall mean the Debtors pre or post Effective Date, as the context requires.

judgment, are fair, equitable, and within the range of reasonableness, and are in the best interests of the Debtors, their Estates, and holders of Claims and Equity Interests.

XXX.        <u>Ad Hoc Group Fees and Expenses and Notes Indenture Trustee Fees and Expenses</u>.  For the avoidance of doubt, the settlements with the Ad Hoc Group and the Notes Indenture Trustee with respect to the Ad Hoc Group Fees and Expenses and Notes Indenture Trustee Fees and Expenses are integral components to the concessions embodied by the Plan.  As evidenced by the Castellano Declaration, (i) the Notes constitute more than 92% of all Claims in Classes 4a, 4b, and 4c and the members of the Ad Hoc Group hold approximately 70% in principal amount of the outstanding Notes, and (ii) the Ad Hoc Group and Notes Indenture Trustee have made substantial contributions to these Chapter 11 Cases, including by engaging in hard fought negotiations on the Plan as a result of which the distribution and overall treatment afforded to the Liquidating Trust Beneficiaries (who include Class 4a, Class 4b, and Class 4c) under the Plan has been significantly enhanced.  The additional value brought into the Estates for the pro rata benefit of the Liquidating Trust Beneficiaries, included:

(a)      A partial Cash repayment of the Intercompany Secured Facility between the Debtors and their Mexican Affiliates, resulting in an increase in the Cash to be transferred to the Liquidating Trust on the Effective Date for the benefit of the Liquidating Trust Beneficiaries;

(b)      The reduction of the Applicable Reserves, the Professional Fee Escrow, and the Wind-Down Amount, which also increased the amount of Cash included in the Liquidating Trust Assets for the benefit of the Liquidating Trust Beneficiaries;

(c)      The Debtors' agreement to a mutually acceptable procedure to review the propriety of more than $6 million in VAT payments made, or to be made, on Professional Fees; and

(d)    Negotiation of the carefully crafted releases in the Plan, which resulted in the preservation of the Preserved Estate Claims to be vested in the Liquidating Trust for the benefit of the Liquidating Trust Beneficiaries; and

(e)    In addition, several members of the Ad Hoc Group provided the DIP Facility, which helped fund the Debtors' operations during these cases.

XXXI.    Therefore, the settlements regarding the (i) Ad Hoc Group Fees and Expenses (to the extent not previously paid during the course of the Chapter 11 Cases or pursuant to the terms of the Final DIP Order[9]) and (ii) Notes Indenture Trustee Fees and Expenses are each: (a) an essential element of the resolution of these Chapter 11 Cases; (b) a sound exercise of the Debtors' business judgment; (c) in the best interests of the Debtors, their Estates, holders of Claims and Equity Interests; and (d) a fair, equitable, and reasonable consideration for the Ad Hoc Group's and Notes Indenture Trustee's contributions to these Chapter 11 Cases and their substantial support for the Plan.  Thus, the payment of the Ad Hoc Group Fees and Expenses and the Notes Indenture Trustee's Fees and Expenses is authorized pursuant to sections 363(b), 365, 1123(b)(6) and 1129(a)(4) of the Bankruptcy Code and Bankruptcy Rule 9019.

XXXII.    Debtor Releases.  Article X.A of the Plan describes certain releases granted by the Debtors and their Estates in favor of the Released Parties (the "**Debtor Releases**").  The Debtors have satisfied their burden with respect to the propriety of the Debtor Releases.  Such releases are a necessary and integral element of the Plan, and are fair, reasonable, and in the best interests of the Debtors, their Estates, and holders of Claims and Equity Interests.

---

[9]    "**Final DIP Order**" means the *Final Order (I) Authorizing the Debtors to Obtain Debtor in Possession Financing and Granting Liens and Superpriority Administrative Claims and (II) Granting Related Relief* [Docket No. 177] approving the DIP Documents on a final basis entered by the Bankruptcy Court on September 13, 2021, as the same may be amended or modified from time to time.

XXXIII.        The Plan, including the Debtor Releases contained therein, was negotiated in good faith and at arm's-length by sophisticated parties represented by able counsel and financial advisors.

XXXIV.        The Debtor Releases appropriately offer protection to parties that participated in the Debtors' Chapter 11 Cases.  Specifically, the Released Parties under the Plan, including: (i) the Debtors; (ii) the current and former directors, officers, agents, members of management and other employees of the Debtors; (iii) the Special Committee and all current and former members of the Special Committee; (iv) the DIP Agent; (v) each DIP Note Purchaser; (vi) the Notes Indenture Trustee; (vii) each member of the Ad Hoc Group; (viii) the agents, attorneys, advisors and other professionals employed by the Debtors from and after March 2021 in respect to work performed from and after March 2021 in connection with the Debtors; (ix) the predecessors, successors and assigns, subsidiaries, affiliates, members, partners, officers, directors, agents, attorneys, advisors, accountants, investment bankers, consultants, and other professionals of any of the Persons listed in clauses (i)- (viii) above, made significant concessions and contributions to the Chapter 11 Cases.  The scope of the Debtor Releases is appropriately tailored under the facts and circumstances of the Chapter 11 Cases.  The Debtor Releases are appropriate in light of, among other things, the value provided by the Released Parties to the Debtors' Estates and the critical nature of the Debtor Releases to the Plan.

XXXV.        As such, the Debtor Releases are: (a) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitate and implement the Plan; (b) a good-faith settlement and compromise of the Claims released by Article X.A of the Plan; (c) in the best interests of the Debtors, their Estates, and all holders of Claims and Equity Interests; (d) fair, equitable, and reasonable; (e) given and made

after due notice and opportunity for hearing; (f) appropriately tailored under the facts and circumstances of the Chapter 11 Cases; and (g) a bar to any of the Debtors and their Estates asserting any Claim or Cause of Action released by the Debtor Releases.

XXXVI.     Third Party Releases.  Article X.B of the Plan describes certain releases (the "**Third Party Releases**") granted by the Releasing Parties in favor of the Released Parties.  The Third Party Releases are: (a) consensual; (b) essential to confirmation of the Plan; (c) given in exchange for a substantial contribution and for the good and valuable consideration provided by the Released Parties that is important to the success of the Plan; (d) a good-faith settlement and compromise of the Claims and Causes of Action released by the Third Party Releases; (e) materially beneficial to, and in the best interests of, the Debtors, their Estates, and holders of Claims and Equity Interests, and important to the overall objectives of the Plan to finally resolve certain Claims among or against certain parties in interest in the Chapter 11 Cases; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released by the Third Party Release against any of the Released Parties; (i) specific in language; and (j) consistent with sections 105, 524, 1123, 1129, and 1141 and other applicable provisions of the Bankruptcy Code.

XXXVII.     Similar to the Debtor Releases, the Third Party Releases were integral to the formulation of the Plan.  The Third Party Releases were critical to incentivizing the Released Parties to support the Plan and preventing potentially significant and time-consuming litigation. The Third Party Releases appropriately offer certain protections to parties who constructively participated in the Debtors' Chapter 11 Cases by supporting the Plan.  The Debtor Releases and the Third Party Releases were the product of lengthy and pain-staking negotiation amongst the Debtors, the Special Committee, the Ad Hoc Group and other constituencies, and expressly carve-

out the Preserved Estate Claims, which shall be vested in the Liquidating Trust.  In addition, certain direct, individual claims that may be held by holders of the Notes Claims and holders of Funded Debt Claims have also been carved out of the Third Party Releases.

XXXVIII.    The Third Party Releases are consensual, as the Releasing Parties in interest were provided notice of the Chapter 11 Cases, the Plan, and the deadline to object to confirmation of the Plan, and object to, or opt out of, the Third Party Releases.  All holders of Claims and Equity Interests were given the opportunity to either affirmatively opt out of or object to (as applicable) the Third Party Releases, and the release provisions of the Plan were conspicuous and emphasized with boldface type in the Plan, the Disclosure Statement, the Unimpaired Non-Voting Status Notice, and the applicable ballots.  The holders of Claims and Equity Interests in Unimpaired Classes (Classes 1, 2, 3, and 7), which are deemed to have accepted the Third Party Releases in the Plan, received the Unimpaired Non-Voting Status Notice, and all Voting Members (in Classes 4a, 4b, and 4c) received the applicable ballot, each of which provides clear and sufficient notice of the Third Party Releases.  In particular, (i) each ballot contained detailed instructions on how to opt out of the releases by marking the election box in the ballots, (ii) the Unimpaired Non-Voting Status Notice emphasized the Unimpaired creditors' right to file an objection to the Third Party Releases by the Plan Objection Deadline, and (iii) each ballot and Unimpaired Non-Voting Status Notice contained conspicuous disclaimers and disclosures that the Third Party Releases would bind the respective Claim holders if they did not timely opt out of or objected to them, as applicable.  In addition, the Debtors, through Prime Clerk, published the approved form of Confirmation Hearing Notice, which also included the releases in bold and capitalized disclaimers in connection thereto, in *The New York Times* and in *El Tiempo* in Colombia.  The Debtors, as evidenced by the Solicitation Affidavit and Confirmation Hearing Notice, provided sufficient

notice of the Third Party Releases. Therefore, the record reflects that holders of Claims and Equity Interests, including those who are Unimpaired and not entitled to vote on the Plan, were provided due and adequate notice of the Third Party Releases, and no further or other notice is necessary.

XXXIX.    The scope of the Third Party Releases is appropriately tailored under the facts and circumstances of the Chapter 11 Cases. Among other things, the Plan provides appropriate and specific disclosure with respect to the claims and Causes of Action that are subject to the Third Party Releases, and no other disclosure is necessary. The Third Party Releases are consistent with established practice in this jurisdiction and others and are not binding on any party that elected *not* to grant such release in compliance with the Solicitation Procedures approved by the Disclosure Statement Order.

XL.    The Third Party Releases provide finality for the Debtors and the Released Parties regarding the parties' respective obligations under the Plan and with respect to the Debtors. The Third Party Releases are a necessary element of the Plan, and are fair, equitable, reasonable, and in the best interests of the Debtors, their Estates, and holders of Claims and Equity Interests.

XLI.    <u>Exculpation</u>. The exculpation provision set forth in Article X.C of the Plan (the "**Exculpation Provision**") and incorporated into this Order is essential to the Plan. The record in the Chapter 11 Cases supports the Exculpation Provision, which is appropriately tailored to protect the Exculpated Parties from unnecessary litigation. The Exculpation Provision, including the carve-out for willful misconduct, gross negligence, or intentional fraud, is consistent with established practice in this jurisdiction and others. The Exculpated Parties subject to the Exculpation Provision have participated in the Chapter 11 Cases in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of votes on the Plan

and distributions of the securities pursuant to the Plan, and are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of securities thereunder.

XLII.    <u>Injunction</u>.  The injunction provision set forth in Article X.D of the Plan (the "**Injunction Provision**") is essential to the Plan and is necessary to implement the Plan and to preserve and enforce the discharge, the Debtor Releases, the Third Party Releases, and the Exculpation Provision.  The Injunction Provision is fair and reasonable and is appropriately tailored to achieve those purposes.

XLIII.    <u>Discharge and Release of Claims Against ALM</u>.  Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the Plan shall discharge and release, effective as of the Effective Date, Claims and Causes of Action of any nature whatsoever, whether known or unknown, against, liabilities of, liens on, obligations of and rights against ALM or any of its assets or properties, including demands, liabilities, and Causes of Action against ALM that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, as set forth in Article X.F of the Plan (the "**ALM Discharge**").  The ALM Discharge is necessary to implement the Plan, appropriate, fair, equitable, and reasonable and is in the best interests of the Debtors, the Estates, and holders of Claims and Equity Interests.

XLIV.    <u>Preservation and Maintenance of Debtor Causes of Action</u>.  The Plan provisions regarding the preservation of Preserved Estate Claims (including the Privileged

Material) and all Causes of Action not expressly settled or released are appropriate and are in the best interests of the Debtors, their Estates, and holders of Claims and Equity Interests.

XLV.        Article IV.B of the Plan, as well as the Plan Supplement, appropriately provide for the preservation by the Debtors of certain Causes of Action in accordance with section 1123(b)(3)(B) of the Bankruptcy Code.  Preserved Estate Claims will, after the Effective Date, be automatically deemed to have been vested in the Liquidating Trust as provided by the Plan.  The Plan is specific and unequivocal that any and all Preserved Estate Claims, whether existing as of the Petition Date or thereafter arising, in any court or other tribunal, are expressly preserved and shall be vested in the Liquidating Trust.  The Plan and the Plan Supplement provide meaningful disclosure with respect to the Preserved Estate Claims that the Liquidating Trust shall automatically be deemed to have been vested with, and all parties in interest received adequate notice with respect to, such Preserved Estate Claims.  For the avoidance of any doubt, Causes of Action released pursuant to the terms of the Plan and any Causes of Action held by ALM or AlphaDebit will not be vested in the Liquidating Trust.

XLVI.        <u>Cash and Vesting of Assets (Other than the Liquidating Trust Assets)</u>.  It is appropriate, fair, equitable, and reasonable and in the best interests of the Debtors, their Estates holders of Claims and Equity Interest that, upon the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all of the Debtors' Assets (including all interests, and rights related thereto) of each of the Debtors, other than the Liquidating Trust Assets, immediately vest in the Debtors free and clear of all Claims, Liens, encumbrances, charges, and other interests described in Article IV.A(1) of the Plan.

XLVII.        <u>Liquidating Trust and Vesting of Liquidating Trust Assets</u>.  On February 18, 2022, the Debtors filed the proposed form of the Liquidating Trust Agreement, as <u>Exhibit 3</u> to

the Plan Supplement [Docket No. 564] and as amended thereafter [Docket Nos. 589 & 606]. The Liquidating Trust Agreement in such form complies with the terms of the Plan, its terms are reasonable, and the Debtors have provided adequate notice of the material terms thereof in accordance with the Bankruptcy Code and the Bankruptcy Rules, and no other or further notice is or shall be required.

XLVIII.    Entry into the Liquidating Trust Agreement is an essential element of the Plan and is in the best interests of the Debtors, their Estates, and holders of Claims and Equity Interests. The establishment of the Liquidating Trust and the form of the Liquidating Trust Agreement (as it may be modified or amended in accordance with the Plan including in respect of being reasonably acceptable to the Ad Hoc Majority) and the selection of Marc S. Kirschner to serve as the Liquidating Trustee, upon the terms set forth in the Plan and Plan Supplement, are appropriate and in the best interests of the Debtors, their Estates, and holders of Claims and Equity Interests.

XLIX.    As set forth in Article IV.C of the Plan and pursuant to sections 1141(b) and (c) of the Bankruptcy Code, it is appropriate, fair, equitable, and reasonable and in the best interests of the Debtors, their Estates, and holders of Claims and Equity Interest that, on the Effective Date, the Debtors (other than AlphaDebit (except with respect to its interests in the Intercompany Secured Claim) and ALM) transfer all of the Liquidating Trust Assets (including AlphaDebit's rights, title, and interests in the Intercompany Secured Claim) to the Liquidating Trust, and such Liquidating Trust Assets immediately vest in the Liquidating Trust free and clear of all Claims, Liens, encumbrances, charges, and other interests.

L.    The Liquidating Trust shall be the successor in interest of the Debtors (other than ALM and, except as specifically provided in the Plan, AlphaDebit) and their Estates (other

than ALM's Estate and, except as specifically provided in the Plan, AlphaDebit's Estate) solely with respect to the Liquidating Trust Assets, as specifically set forth in the Plan or in the Liquidating Trust Agreement.

LI.          Upon its execution, pursuant to this Order and the Plan, the Liquidating Trust Agreement shall, upon the Effective Date, be valid, binding, and enforceable in accordance with its terms.

LII.          <u>Alpha Noteholder Claims Trust</u>.  On February 28, 2022, the Debtors filed the proposed form of the Alpha Noteholder Claims Trust Agreement, as <u>Exhibit 4</u> to the Plan Supplement [Docket No. 589] and as amended thereafter [Docket No. 606].  The Alpha Noteholder Claims Trust Agreement, in such form, complies with the terms of the Plan, its terms are reasonable, and the Debtors have provided adequate notice of the material terms thereof in accordance with the Bankruptcy Code and the Bankruptcy Rules, and no other or further notice is or shall be required.

LIII.          Article VI of the Plan, as well as the Plan Supplement, appropriately provide for the preservation of certain Preserved Indenture and Noteholder Claims from the Releases. Preserved Indenture and Noteholder Claims held by Consenting Noteholders will, after the Effective Date, be automatically deemed to have been vested in the Alpha Noteholder Claims Trust, and as provided by the Plan.  For the avoidance of any doubt, on the Effective Date, Causes of Action released pursuant to the terms of the Plan are released.

LIV.          Entry into the Alpha Noteholder Claims Trust Agreement is an essential element of the settlement that resolves various issues between the Debtors and the Ad Hoc Group whereby the Debtors have agreed to pay a portion of the Ad Hoc Group Fees and Expenses (the "**Ad Hoc Group Settlement**").  The establishment of the Alpha Noteholder Claims Trust and the

form of the Alpha Noteholders Claim Trust Agreement (as it may be modified or amended in accordance with the Plan including in respect of being reasonably acceptable to the Ad Hoc Majority) and the selection of Marc S. Kirschner to serve as the Alpha Noteholder Claims Trust Trustee, upon the terms set forth in the Plan and Plan Supplement, are appropriate and in the best interests of the Debtors, their Estates, and holders of Claims and Equity Interests.

LV.            Upon its execution, pursuant to this Order and the Plan, the Alpha Noteholder Claims Trust Agreement shall, upon the Effective Date, be valid, binding, and enforceable in accordance with its terms.  In order to clarify which holders of Notes opted out of contributing their Claims and Causes of Action to the Alpha Noteholder Claims Trust, Prime Clerk shall send all holders of Notes Claims opt-out election instructions, in a form which is mutually satisfactory to the Debtors and Ad Hoc Group, either prior to or within a reasonable time after the Effective Date.  Any costs related to such process outlined in this paragraph shall be deducted from the initial distributions made to the holders of the Notes Claims from the Cash in the Liquidating Trust.

LVI.            Preserved Indenture and Noteholder Claims held by Non-Consenting Noteholders or that may be asserted on behalf of all holders of Notes Claims will be retained by the applicable entity that may hold them.

LVII.            <u>Wind-Down and Wind-Down Budget</u>.  The provisions of Article IV.H are an integral part of the Plan.  The Wind-Down Budget, attached as <u>Exhibit 2</u> to the Plan Supplement [Docket No. 564] and as amended thereafter [Docket No. 606], is adequate, proper, and reasonable under the circumstances of these Chapter 11 Cases.

LVIII.            <u>Alf Recursos Escrow, Refund Escrows, Contingent Local Claims Trust, and Professional Fee Escrow</u>.  The creation of the ALF Recursos Escrow (if applicable), Refund

Escrow, Contingent Local Claims Trust, and Professional Fee Escrow is reasonable, appropriate, and in the best interests of the Debtors, their Estates, and holders of Claims and Equity Interests.

LIX.        <u>Executory Contracts and Unexpired Leases</u>.  Article IX.A of the Plan provides that on the Effective Date, subject to certain exceptions set forth in the Plan and herein (including the Assumed Executory Contracts and Unexpired Leases Schedule referenced below), all Executory Contracts and Unexpired Leases of the Debtors shall be rejected pursuant to the provisions of section 365 of the Bankruptcy Code.  Exclusion of a contract, lease or other agreement from the exceptions from Article IX.A.1 of the Plan constitutes adequate and sufficient notice (i) of any such Claims arising thereunder or related thereto and that such Claims shall be treated as Foreign Convenience Claims or Other Unsecured Claims, as applicable, under the Plan, and (ii) the Debtors are no longer bound by, or otherwise obligated to perform, any such obligations, transactions, or undertakings relating thereto or arising thereunder.

LX.        The requirements of section 365(f) of the Bankruptcy Code have been satisfied with respect to the assumption of Executory Contracts and Unexpired Leases pursuant to Article IX.A.3 of the Plan and each rejected agreement, Executory Contract, or Unexpired Lease pursuant to Article IX.A.2 is deemed burdensome to the Debtors and their Estates, and the rejection thereof is in their best interests.

LXI.        With respect to the assumed Executory Contracts and Unexpired Leases listed in the *Notice to Counterparties of Executory Contracts and Unexpired Leases that the Debtors May Assume* [Docket No. 549] (the "**Initial Assumption Notice**") and the *Amended Notice to Counterparties of Executory Contracts and Unexpired Leases that the Debtors May Assume* [Docket No. 579] ("**Amended Assumption Notice**", together with the Initial Assumption Notice, the "**Assumption Notice**", and the assumption schedules attached to the Initial

Assumption Notice and the Amended Assumption Notice, as further supplemented, amended, or revised, subject to the Consultation Right of the Ad Hoc Group, the "**Assumed Executory Contracts and Unexpired Leases Schedule**"), subject to the objection deadlines set forth therein, each of the counterparties to the assumed Executory Contracts and Unexpired Leases has had an opportunity to object the cure amounts set forth therein or the proposed assumption of certain of the Executory Contracts and Unexpired Leases.  Subject to the expiration of the objection period with respect to certain Executory Contracts and Unexpired Leases as identified on the Assumption Notice, as to each such Executory Contract or Unexpired Lease, payment of the cure amounts set forth on the Assumed Executory Contracts and Unexpired Leases Schedule, or a cure amount otherwise agreed to by the Debtors and the Counterparty and subject to the Consultation Right of the Ad Hoc Group, or a cure amount determined by the Court as applicable, is sufficient for the Debtors to comply fully with the requirements of sections 365(b)(1)(A), (B), and (C) of the Bankruptcy Code.

LXII.      The Debtors have exercised reasonable business judgment in determining whether to assume, assume and assign, or reject each of its Executory Contracts and Unexpired Leases as set forth in Article IX of the Plan, the Assumed Executory Contracts and Unexpired Leases Schedule, or otherwise, and in this Order.

LXIII.      <u>Effect of Non-Occurrence of the Effective Date</u>.  If the Effective Date shall not occur (except as provided in Article IX.E of the Plan), the Plan shall be null and void and nothing contained in the Plan shall: (i) constitute a waiver or release of any Claims against or Equity Interests in the Debtors; (ii) prejudice in any manner the rights of the Debtors, *including*, without limitation, any right to seek an extension of the exclusivity periods under section 1121(d)

of the Bankruptcy Code; or (iii) constitute an admission, acknowledgement, offer or undertaking by the Debtors.

LXIV.        Objections.  All parties have had a full and fair opportunity to litigate all issues raised in the objections to confirmation of the Plan, or which might have been raised, and the objections have been fully and fairly litigated or resolved, including by agreed-upon reservations of rights as set forth in this Order.

LXV.        Satisfaction of Confirmation Requirements.  Based on the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

LXVI.        Each of the conditions precedent to the entry of this Order has been satisfied or waived in accordance with Article XI.A (Conditions Precedent to Confirmation) of the Plan.

LXVII.        The Plan complies with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Securities Act, and all similar federal state and local laws.  The purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act.

LXVIII.        Satisfaction of all requirements to Confirm a Plan for ALM.  The Plan provides for ALM to emerge from chapter 11 unimpaired and unaltered and, unlike the other Debtors, it is not contemplating dissolution under local (Delaware) law at this time.  ALM has no Allowed Claims against it and the Board of Managers is contemplated to continue as currently constructed.

**FURTHER, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

**A.        Confirmation of the Plan**

1.        The Plan, including (a) all modifications to the Plan filed with the Court prior to or during the Confirmation Hearing and (b) all documents and agreements necessary for its implementation that are incorporated into the Plan through the Plan Supplement or otherwise

provided on the docket, is APPROVED, GIVEN EFFECT, and CONFIRMED pursuant to section 1129 of the Bankruptcy Code.

2.      The amendments and modifications to the Solicitation Plan since the filing thereof and incorporated into the Plan are approved in accordance with section 1127(a) of the Bankruptcy Code and Rule 3019(a) of the Bankruptcy Rules.

3.      The documents substantially in the forms contained in the Plan Supplement are integral to the Plan and are approved by the Court, and the Debtors and the Liquidating Trust (as applicable) are authorized to take all actions required under the Plan and the Plan Supplement to effectuate the Plan and the transactions contemplated therein.

4.      The terms of the Plan, the Plan Supplement, and the documents substantially in the forms attached thereto, are incorporated herein by reference and are an integral part of this Order. The terms of the Plan, the Plan Supplement, and the documents substantially in the forms attached thereto, and all other relevant and necessary documents shall be effective and binding as of the Effective Date.  The failure to specifically include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document in this Order does not diminish or impair the effectiveness or enforceability of such article, section, or provision, it being the intent of the Court that the Plan, the Plan Supplement, and the exhibits thereto be confirmed in their entirety.

5.      The provisions of the Disclosure Statement, the Plan, the Plan Supplement, and this Order shall be construed in a manner consistent with each other so as to effect the purpose of each other; *provided, however*, that if there is an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and the Plan Supplement (including each of its documents), the terms of the Plan

shall control.  In the event of an inconsistency between this Order and the Plan, this Order shall control.

6.      This Order shall constitute, to the greatest extent permissible, all approvals and consents, if any, required by the laws, rules or regulations of any state or any governmental authority with respect to the implementation or consummation of the Plan and any act that may be necessary or appropriate for the implementation or consummation of the Plan or the transactions contemplated by the Plan and this Order.

7.      Each federal, state, commonwealth, local, foreign, or other governmental agency is authorized to accept for filing and/or recording any and all documents, and instruments necessary or appropriate to effectuate, implement, or consummate the transactions contemplated by the Plan and this Order, including, without limitation, this Order itself.

**B.      Resolution of the Objections**

8.      All objections to confirmation or responses to final approval of the Plan have been withdrawn, waived, resolved by the Debtors, or overruled by this Court prior to entry of this Order. To the extent that any objections (including any reservations of rights contained therein) to confirmation of the Plan (except for the payment or amount of the cure amounts, or the assumption by the Debtors of any of the Executory Contracts or Unexpired Leases that were added to the Assumed Executory Contracts and Unexpired Leases Schedule filed on February 25, 2022 (as reflected on Schedule 1 attached to [Docket No. 579])) or responses to final approval of the Plan have not been withdrawn, waived, or resolved prior to, or on the record at, the Confirmation Hearing, all such objections (including any reservation of rights) are hereby overruled.

**C.      Notice**

9.      Good, proper, and sufficient notice, in compliance with all applicable Bankruptcy Rules and Local Rules, has been provided of: (a) the Voting Deadline, Plan Supplement  (including

each of its documents), Confirmation Brief, and Confirmation Hearing; (b) the deadline for filing and serving objections to the confirmation of the Plan; (c) the Assumed Executory Contracts and Unexpired Leases Schedule, proposed cure payments, and deadline for filing objections to the proposed cure amounts and/or the assumption; and (d) the settlements, releases, exculpations, injunctions, and related provisions of the Plan.  No other or further notice is required.

> **D.**      **Treatment of Claims and Equity Interests Under the Plan**

> 10.      The terms of the Plan alone shall govern the classification of Claims and Equity Interests for purposes of making distributions thereunder.

> 11.      The Plan classifies Claims and Equity Interests into seven (7) separate Classes reflecting the differing characteristics of those Claims and Equity Interests between Classes and the distinct legal rights and/or priority of the holders of those Claims and Equity Interests in the separate Classes.  A rational basis and reasonable grounds, including the Debtors' capital and corporate structure, and the relative priority of such Claims and Equity Interests, exist for the separate classifications under the Plan.  Furthermore, each Class comprises Claims and Equity Interests that are substantially similar to the other Claims or Equity Interests within the same Class. The Plan also affords each Claim against, or Equity Interest in, the Debtors within a particular Class the same treatment under the Plan, unless the holder of a particular Claim or Equity Interest has agreed to a less favorable treatment with respect to such Claim or Equity Interest.

> 12.      Pursuant to Article III.A and III.B of the Plan:

> (a)      The *Allowed Priority Claims* (Class 1) are Unimpaired , are deemed to accept the Plan, and, on the Plan Distribution Date, shall receive payment in full and in Cash;

(b)      The *Allowed Secured Claims* (Class 2) are Unimpaired, are deemed to accept the Plan, and, on the Plan Distribution Date, shall receive either (i) payment in full and in Cash or (ii) its collateral in full satisfaction thereof;

(c)      The *Allowed Foreign Convenience Claims* (Class 3) are Unimpaired, are deemed to accept the Plan, and shall receive, except to the extent that a holder of a Foreign Convenience Claim agrees to a less favorable treatment, in full satisfaction thereof, Cash equal to 100% of the amount of such Allowed Foreign Convenience Claim on or as soon as practicable after the latest of (x) the Effective Date, (y) the date that such Foreign Convenience Claim becomes Allowed, and (z) a date agreed to by the Debtors and the holder of such Foreign Convenience Claim;

(d)      The *Allowed Other Unsecured Claims* (Class 4a) are Impaired, were entitled to vote on the Plan, and, on the Plan Distribution Date, shall receive, in full satisfaction thereof, its Pro Rata Share of the beneficial interest in the Liquidating Trust, entitling such holder to receive proceeds on account of such interests;

(e)      The *Allowed Notes Claims* (Class 4b) are Impaired, were entitled to vote on the Plan, and shall, subject to the Notes Indenture Trustee's Charging Lien and the funding of the Notes Indenture Trustee Reserve, receive on the Plan Distribution Date, in full satisfaction of its Allowed Notes Claim, its Pro Rata Share of the beneficial interest in the Liquidating Trust, entitling such holder to receive proceeds on account of such interests;

(f)      The *Allowed Funded Debt Claims* (Class 4c) against the applicable Debtors are Impaired, were entitled to vote on the Plan, and, shall receive, on the Plan Distribution Date, in full satisfaction of its Allowed Funded Debt Claim, its Pro Rata Share of the

beneficial interest in the Liquidating Trust, entitling such holder to receive proceeds on account of such interests;

(g)     The *Credit Suisse Claims* (Class 4d) shall receive no distribution under the Plan on account of such Claim and are deemed to reject the Plan;

(h)     The *Intercompany Claims* among Debtors (Class 5) shall be cancelled on the Effective Date, are not entitled to any Plan Distribution, and are deemed to reject the Plan;

(i)      The *Equity Interests* in the Debtors (other than ALM) (Class 6) shall be Reinstated for administrative purposes only on the Effective Date to facilitate and implement such Debtors' wind-down and dissolution in accordance with applicable local law, shall receive no distribution under the Plan, and are deemed to reject the Plan; and

(j)      The *Equity Interests in ALM* (Class 7) are Unimpaired, are deemed to accept the plan, and shall be Reinstated on the Effective Date.

13.     The DIP Claims (if any), the Administrative Claims, and Tax Claims are not designated as classes of Claims for purposes of the Plan or for purposes of sections 1123, 1124, 1125, 1126, or 1129 of the Bankruptcy Code.  Administrative Claims and Tax Claims are treated in accordance with sections 1129(a)(9)(A) and 1129(a)(9)(C) of the Bankruptcy Code, respectively.

14.     The payment or other distribution on account of Claims (including, without limitation, Administrative Claims and Tax Claims) provided in the Plan shall constitute the full and final satisfaction, settlement, release, and discharge of each such Claim.

    **E.     Means for Implementation of the Plan**

15.     <u>The Cash on Hand from the Sale Consideration</u>.  The Debtors shall use Cash on

hand, if any, and then use Cash from the Sale Consideration to fund the Applicable Reserves (as defined below), the Professional Fee Escrow, and the Wind-Down Reserve as provided under the Plan.

16.     <u>Vesting of Assets Free and Clear</u>.  Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan or in this Order, upon the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all of the Debtors' Assets (including all interests, and rights related thereto) of each of the Debtors, other than the Liquidating Trust Assets, shall immediately vest in the Debtors free and clear of all Claims, Liens, encumbrances, charges, and other interests.  All Claims, Liens, encumbrances, charges, and other interests against or in the Assets (other than the Liquidating Trust Assets) shall be deemed fully released as of the Effective Date, except as otherwise provided in the Plan or this Order.

17.     <u>Vesting of Liquidating Trust Assets</u>.  Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan or in this Order, upon the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code and subject to applicable law, all Liquidating Trust Assets (including all interests and rights related thereto) shall immediately vest in the Liquidating Trust free and clear of all Claims, Liens, encumbrances, charges, and other interests.  All Claims, Liens, encumbrances, charges, and other interests against or in the Liquidating Trust Assets shall be deemed fully released as of the Effective Date, except as otherwise provided in the Plan or this Order.

18.     <u>Transfer of Liquidating Trust Assets Free and Clear</u>.  On the Effective Date, other than as set forth in the Plan or this Order and subject to applicable law, the Debtors (other than ALM and, except as provided in the Plan, AlphaDebit) are authorized and directed to, and shall be

deemed to have irrevocably transferred, granted, assigned, conveyed, and delivered to the Liquidating Trust, for the benefit of the Liquidating Trust Beneficiaries, in the form thereof existing on such date, all of the Debtors' (other than ALM and, except as provided in the Plan, AlphaDebit) and their Estates' (other than ALM and, except as provided in the Plan, AlphaDebit) right, title, and interest in and to all of the Liquidating Trust Assets free and clear of any and all Liens, Claims, encumbrances, and interests (legal, beneficial, or otherwise) of all other Persons and entities. Without limiting the generality of the foregoing, the Liquidating Trust Assets to be transferred to such trust shall include the Preserved Estate Claims. The Debtors (other than ALM and, except as provided in the Plan, AlphaDebit), the Liquidating Trustee, the Liquidating Trust Beneficiaries, and any party under the control of such parties are hereby authorized to execute any documents or other instruments and to take all other steps as necessary to cause title to the Liquidating Trust Assets to be transferred to the Liquidating Trust. Upon the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Debtors (other than ALM and, except as provided in the Plan, AlphaDebit), shall have no interest in, or with respect to, the Liquidating Trust Assets or the Liquidating Trust. Upon delivery of the Liquidating Trust Assets to the Liquidating Trust, the Debtors and their predecessors, successors, and assigns shall be released from all liability with respect to the delivery thereof and shall have no reversionary or further interest in, or with respect to, the Liquidating Trust Assets or the Liquidating Trust in accordance with Article IV.C of the Plan. Notwithstanding the foregoing, for purposes of section 553 of the Bankruptcy Code, the transfer of the Liquidating Trust Assets to the Liquidating Trust shall not affect the mutuality of obligations that otherwise may have existed prior to the effectuation of such transfer. Such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use, or other similar tax, pursuant to section 1146(a) of the Bankruptcy Code. For purposes

of this paragraph only, the term "Debtors" shall also include only AlphaDebit's rights, title, and interests in the Intercompany Secured Claim and all Cash received by AlphaDebit and Alpha Capital as payment on the Intercompany Secured Claim prior to or on the Effective Date.

19.       On the Effective Date, subject to applicable local law, the Liquidating Trust shall be authorized to make distributions to the Liquidating Trust Beneficiaries in accordance with the Plan, this Order, and the Liquidating Trust Agreement.

20.       <u>Preservation and Maintenance of Debtor Causes of Action.</u>  Except as otherwise provided in the Plan or this Order, after the Effective Date, the Liquidating Trust is automatically deemed to have been vested with any and all rights to commence, pursue, litigate, or settle, as appropriate, any and all Preserved Estate Claims, whether existing as of the Petition Date or thereafter arising, in any court or other tribunal including, without limitation, in an adversary proceeding filed in the Bankruptcy Court in connection with the Chapter 11 Cases.  The Liquidating Trust as the successor in interest to the Debtors (other than ALM and AlphaDebit (except with respect to AlphaDebit's interest in the Intercompany Secured Claims) and their Estates (other than the Estates of ALM and AlphaDebit), may, in its sole and absolute discretion, and will have the exclusive right to, investigate, enforce, sue on, settle, compromise, transfer, or assign (or decline to do any of the foregoing) any Preserved Estate Claims that have not been released pursuant to the terms of the Plan without notice to or approval from this Court or the Debtors.  The Liquidating Trust or its successor(s) may pursue such Preserved Estate Claims as appropriate in accordance with the best interests of the Liquidating Trust, or its successor(s) who hold such rights.  In addition, solely with respect to the Preserved Estate Claims, the Liquidating Trust shall have the right to pursue or adopt any claims alleged in any lawsuit in which any Debtor is a plaintiff, defendant or an interested party, against any Person, including, without limitation,

the plaintiffs or co-defendants in such lawsuits.

21.     Unless a Preserved Estate Claim against a holder of a Claim or an Equity Interest or other Entity is expressly waived, relinquished, released, compromised, or settled in the Plan or any Final Order (including, without limitation, this Order or by virtue of the allowance of such Claim hereunder), such Preserved Estate Claim is expressly preserved for later adjudication by the Liquidating Trust (including, without limitation, Causes of Action not specifically identified or of which the Debtors or their creditors who shall receive beneficial interests in the Liquidating Trust may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances that may change or be different from those the Debtors now believe to exist, to the extent such Claims are not released by the Plan).   Unless a Preserved Indenture and Noteholder Claim is expressly waived, relinquished, released, compromised, or settled in the Plan or any Final Order (including, without limitation, this Order or by virtue of the allowance of such Claim hereunder), such Preserved Indenture and Noteholder Claim is expressly preserved for later adjudication by the Alpha Noteholder Claims Trust, the Notes Indenture Trustee or the Non-Consenting Noteholder, as applicable (including, without limitation, in each case, Causes of Action not specifically identified or of which such parties may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to such parties at this time or facts or circumstances that may change or be different from those believed to be in existence to the extent such Claims are not released by the Plan).   Therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise), or laches will apply to such Preserved Estate Claims or Preserved Indenture and Noteholder Claims upon or after the entry of this Order or the Effective Date of the

Plan based on the Plan or this Order, except where such Preserved Estate Claims or Preserved Indenture and Noteholder Claims have been expressly released in the Plan (including, without limitation, and for the avoidance of doubt, the releases contained in Article X of the Plan) or any other Final Order (including, without limitation, this Order).

22.     No Causes of Action against any of the Released Parties which are being expressly released pursuant to the Plan shall be investigated or pursued by the Liquidating Trustee, Debtors, or any other Releasing Party.

23.     <u>Corporate Action.</u>  The entry of this Order shall constitute authorization for, as applicable, the Debtors, the Liquidating Trustee, and the Alpha Noteholder Claims Trust Trustee to take or cause to be taken, all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan and the Plan Documents prior to, on and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Court without further approval, act or action under any applicable law, order, rule or regulation, including, without limitation, (i) the incurrence of all obligations contemplated by the Plan and the making of Plan Distributions, (ii) the implementation of all settlements and compromises as set forth in or contemplated by the Plan and that are hereby approved, and (iii) the execution, delivery, filing and/or recording of any contracts, agreements, instruments or other documents contemplated by the Plan Documents (or necessary or desirable to effectuate the transactions contemplated by the Plan Documents).

24.     On the Effective Date, the officers of the Debtors are authorized to execute and deliver all agreements, documents, instruments, notices, and certificates as are contemplated by the Plan and to take all necessary actions required in connection therewith, in the name of and on behalf of the Debtors.  Notwithstanding anything to the contrary in the Plan, the current members

of ALM board of managers that served prior to the Effective Date will retain their positions and continue to serve in such positions after the Effective Date.

25.    <u>Refund Escrow.</u>  On and after the Effective Date, the Debtors shall establish (if necessary), fund (if necessary), and maintain the Refund Escrow to be administered pursuant to Colombian law.  For the avoidance of doubt, the Debtors are authorized to hold in trust no more than the amount specified in the definition of Refund Escrow in the Plan that has been earmarked to pay the Refund Claims (as authorized by this Court and defined in the *Final Order Authorizing the Debtors to Pay Certain Prepetition Claims of Critical Vendors, Foreign Vendors, and Customers* [Docket No. 143]).

26.    <u>Contingent Local Claims Trust</u>.  As soon as practicable after the Effective Date, the Debtors are hereby authorized to and shall establish the Contingent Local Claims Trust under Colombian law and fund the amount specified in the definition of Contingent Local Claims Trust in the Plan.

27.    <u>Cancellation of Notes, Instruments, Certificates, and Other Existing Securities.</u> Except as otherwise provided in the Plan (including, but not limited to, in Article III.B), all Equity Interests in the Debtors (other than ALM) and any other note, bond, indenture or other instrument or document evidencing or creating any indebtedness or obligation of the Debtors shall be deemed cancelled on the Effective Date; *provided that*, notwithstanding such cancellation, satisfaction, release, and discharge, anything to the contrary contained in the Plan or this Order, or the occurrence of the Confirmation Date or the Effective Date, any such document or instrument that governs the rights, claims, or remedies of the DIP Agent, or any other agent or trustee in respect of any of the Funded Debt Claims shall continue in effect solely for purposes of: (1) allowing the beneficial holders of such Claims to receive distributions as specified under the Plan; (2) allowing

and preserving the rights of the DIP Agent, or any other of the aforementioned agents or trustees, as applicable, to make distributions as specified under the Plan on account of Allowed Claims, as applicable, including allowing the DIP Agent or any of the other aforementioned agents and trustees to submit invoices to the Debtors for any amount and enforce any obligation owed to them under the Plan to the extent authorized or allowed by the DIP Documents or any other document or instrument evidencing or concerning the Funded Debt Claims; (3) preserving all rights, remedies, indemnities, powers, and protections, including rights of enforcement, of the DIP Agent against any person (including, without limitation, with respect to any indemnification or contribution from the respective holders of Allowed Claims under the DIP Documents, as applicable), or any exculpations of the DIP Agent, pursuant to and subject to the terms of the DIP Documents; (4) permitting the DIP Agent to appear in the Chapter 11 Cases or in any proceeding by the Bankruptcy Court or any other court, including to enforce the respective obligations owed to them under the Plan and to enforce any obligations owed to their respective beneficial holders of Claims under the Plan in accordance with the DIP Documents; and (5) permitting the DIP Agent to perform any functions that are necessary to effectuate the foregoing.

28.     Notwithstanding the foregoing, on and after the Effective Date, all duties and responsibilities of the Debtors and the Notes Indenture Trustee under the Notes Indentures, as related to the Debtors, shall terminate and shall be fully discharged and released, except as stated in Article IV.H. of the Plan.  In addition, the Notes and the obligations evidenced thereby shall continue to the same extent as the Notes Indentures, including but not limited to, in all respects as to the Non-Debtor Affiliates.

29.     <u>Wind-Down and Wind- Down Budget</u>.  The Debtors (or their designees) are authorized to allocate the Wind-Down Amount disclosed in the Plan Supplement and which shall

be used to pay the types of disbursements set forth in, and in accordance with, the Wind-Down Budget for the purposes of payment of all of the costs and expenses required to wind-down the applicable liquidating Debtors under the Plan and to fund such Debtors' liquidation in their respective local jurisdictions.   On the Effective Date, the Debtors shall retain the Sale Consideration or, if applicable, Cash in an amount equal to the Wind-Down Amount (inclusive of the Professional Fee Escrow) in accordance with the terms of the Wind-Down Budget to facilitate the liquidation and/or dissolution of the respective Debtors under local law.   Any remaining amounts of Cash in the Wind-Down Reserve following all required distributions therefrom in accordance with the terms of the Wind-Down Budget and the Plan shall promptly be transferred to the Liquidating Trust Distribution Account in accordance with the terms of the Plan and the Wind-Down Budget.

30.    On and after the Effective Date, in accordance with the Wind-Down Budget, the Debtors (except for ALM) shall: (1) continue in existence solely for purposes of (a) winding down the Debtors' businesses and affairs as expeditiously as reasonably possible pursuant to applicable local law, (b) paying the Professional Fee Claims, (c) filing appropriate tax returns, (d) complying with their continuing obligations under the Sale Documents (if applicable), (e) administering the Refund Escrow, (f) administering the Contingent Local Claims Trust, (g) administering the Allowed AFPST Claims, (h) disputing the Disputed AFPST Claims, and (i) administering the Plan in an efficacious manner; and (2) liquidate or dissolve, as applicable, pursuant to applicable local law.

31.    On and after the Effective Date, the Debtors are authorized and empowered, without further approval of this Court, to implement the Plan and any applicable orders of this Court, conduct the wind-down and dissolution in accordance with the terms of the Plan and

applicable local law, and to execute, and deliver, file and/or record any contracts, agreements, instruments or other documents, necessary to implement the wind-down and dissolution of the applicable liquidating Debtors' businesses and affairs. The Debtors are hereby authorized and empowered to take any actions necessary to wind-down the affairs of the Debtors; *provided, however*, that without approval by this Court, the Debtors shall not incur or make any expenditure or disbursement which is not contemplated by, or which would be in excess of, the amounts included in the Wind-Down Budget or which would cause the aggregate of such expenditures and disbursements to exceed the Wind-Down Amount.

32.    The Debtors are hereby authorized to fully fund the Wind-Down Reserve pursuant to the Plan.

33.    <u>Applicable Reserves</u>.  Except as otherwise provided in the Plan, Plan Distributions shall be made to the holders of Allowed Claims as reflected in the registry of Claims maintained by Prime Clerk, the Debtors' claims agent, on the Effective Date.  Notwithstanding and without limitation of the generality of the foregoing (see Art. VII.A of the Plan), prior to the Effective Date, the Debtors shall determine the amount of the Administrative Claim Reserve (subject to the Consultation Right of the Ad Hoc Group), the Foreign Convenience Reserve, the Priority Claim Reserve (subject to the Consultation Right of the Ad Hoc Group), the Secured Claim Reserve (subject to the Consultation Right of the Ad Hoc Group), the Tax Claim Reserve (subject to the Consultation Right of the Ad Hoc Group), the Alf Recursos Escrow (if applicable), the Refund Escrow, and the Contingent Local Claims Trust (collectively, the "**Applicable Reserves**") and before or after the Effective Date, the Debtors are hereby authorized to set aside Cash to fund such Applicable Reserves, *provided that* after all such obligations payable from the Applicable Reserves have been paid in full, any remaining Cash in such reserve shall be transferred to the Liquidating

Trust Distribution Account unless the Debtors obtain approval from this Court for such amounts to be transferred to the Wind-Down Reserve.

34.    The Debtors are hereby authorized to fully fund the Applicable Reserves pursuant to the Plan.

35.    <u>Wind-Down Amount and Applicable Reserves</u>.  The Wind-Down Amounts within the Wind-Down Budget and the amount of the Applicable Reserves are still subject to change, modification, amendment, and negotiation by the Debtors, with the consent of the Ad Hoc Group, and shall be finalized before the Effective Date; provided, however, that in the event that the Debtors and Ad Hoc Group are not able to reach agreement on the appropriate amount of the Wind-Down Amounts or the amount of the Applicable Reserves prior to the Effective Date, the Debtors may seek an order of the Bankruptcy Court establishing the Wind-Down Amount and/or the amount of the Applicable Reserves upon notice  (which may be on shortened notice, if necessary) to the Ad Hoc Group and other parties in interest on the regular service list.

**F.    Liquidating Trust**

36.    On the Effective Date, the Liquidating Trust shall be established for the benefit of the Liquidating Trust Beneficiaries.  The Liquidating Trustee is hereby authorized, without further approval of this Court or any other party and in accordance with the Plan, to execute the Liquidating Trust Agreement and deliver, file, and/or record any contracts, agreements, instruments or other documents, including relating to the Liquidating Trust Agreement, contemplated by the Plan Documents (or necessary or desirable to effectuate the transactions contemplated by the Plan Documents) and to take all other steps necessary to establish the Liquidating Trust and to perform his obligations pursuant to the Liquidating Trust Agreement and consistent with the Plan.  The powers, authority, responsibilities, and duties of the Liquidating Trust and the Liquidating Trustee are set forth in and shall be governed by the Plan and the

Liquidating Trust Agreement.

37.    The Liquidating Trust, as set forth in the Liquidating Trust Agreement and consistent with the Plan, and all other ancillary documents, terms and conditions thereof (subject to reasonable consent of the Ad Hoc Group Majority as to such documents and the terms and conditions thereof), and all transactions contemplated thereby, including any and all actions to be taken, undertakings to be made, and obligations to be incurred are hereby authorized and approved. The failure to specifically reference any particular provision set forth in the Plan or Liquidating Trust Agreement in this Order shall not diminish or impair the efficacy of such provision, it being the intent of the Court that the Liquidating Trust Agreement, and each and every provision, term, and condition thereof be authorized and approved in their entirety.

38.    The Liquidating Trust shall be administered in accordance with the Liquidating Trust Agreement and shall have the standing and authority to enforce any obligations to it under the Plan; *provided that* the costs of administering the Liquidating Trust and all fees and expenses incurred by and on behalf of the Liquidating Trust shall be charged against the Liquidating Trust Assets subject to the terms of the Liquidating Trust Agreement and the Plan.  Notwithstanding anything in the Plan to the contrary, the Debtors shall have no obligation to provide any funds or financing to the Liquidating Trust, other than the obligation to contribute the Liquidating Trust Assets, and under no circumstances will the costs or expenses of the Liquidating Trust be paid or reimbursed by the Debtors.

39.    Once executed, the Liquidating Trust Agreement shall constitute legal, valid, and binding obligations of the parties thereto and shall be enforceable according to its terms.

40.    On the Effective Date, the Liquidating Trust Oversight Committee shall be formed, and the Liquidating Trustee shall be appointed.  The Liquidating Trust Oversight Committee shall

oversee the implementation and administration of the Liquidating Trust and the Plan. The Liquidating Trust shall be governed and administered by the Liquidating Trustee, subject to the supervision of the Liquidating Trust Oversight Committee, as provided under the Plan and the Liquidating Trust Agreement. Notwithstanding anything to the contrary in the Plan, the Liquidating Trust Oversight Committee shall act in furtherance of, and consistent with, the purpose and provisions of the Liquidating Trust.

41.     The selection of the Liquidating Trustee and members of the Liquidating Trust Oversight Committee is consistent with the interests of holders of Claims and Equity Interests, and public policy.

42.     After the Effective Date, the Liquidating Trust Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof without further order of this Court.

### G.     Alpha Noteholder Claims Trust

43.     The Alpha Noteholder Claims Trust shall be established for the benefit of the Alpha Noteholder Claims Trust Beneficiaries, *i.e.*, holders of the Notes or Notes Claims who do not opt out of transferring their Preserved Noteholder Claims to the Alpha Noteholder Claims Trust (the "**Consenting Noteholders**").

44.     On the Effective Date, or as promptly thereafter as practicable following the final determination of which holders of the Notes are Consenting Noteholders, the Alpha Noteholder Claims Trust shall be created and the Alpha Noteholder Claims Trust Trustee (who may be the same Person as the Liquidating Trustee) shall be appointed. The Alpha Noteholder Claims Trust shall be governed by the Alpha Noteholder Claims Trust Agreement under the oversight of the Alpha Noteholder Claims Trust Oversight Committee, which shall select and appoint the Alpha Noteholder Claims Trust Trustee, and if necessary, a replacement Alpha Noteholder Claims Trust

Trustee, as shall be provided for in the Alpha Noteholder Claims Trust Agreement. The Alpha Noteholder Claims Trust Trustee is hereby authorized, without further approval of this Court or any other party and in accordance with the Plan, to execute the Alpha Noteholder Claims Trust Agreement and deliver, file and/or record any contracts, agreements, instruments or other documents, including relating to the Alpha Noteholder Claims Trust Agreement, contemplated by the Plan Documents (or necessary or desirable to effectuate the transactions contemplated by the Plan Documents) and to take all other steps necessary to establish the Alpha Noteholder Claims Trust and to perform his obligations pursuant to the Alpha Noteholder Claims Trust Agreement and consistent with the Plan.

45.     The Alpha Noteholder Claims Trust Agreement may provide powers, duties, and authorities in addition to those explicitly stated in the Plan, but only to the extent that such powers, duties, and authorities are for the purposes of (i) receiving, investigating, prosecuting, settling and ensuring the liquidation of the Preserved Noteholder Claims which constitute Alpha Noteholder Claims Trust Assets, in the sole discretion of the Alpha Noteholder Claims Trust Trustee and the Alpha Noteholder Claims Trust Oversight Committee and (ii) distributing any net Cash proceeds of such assets pursuant to the Plan, with no objective to continue or engage in the conduct of a trade or business.

46.     <u>Alpha Noteholder Claims Trust Assets</u>.  At the time of formation of the Alpha Noteholder Claims Trust and subject to the terms of and solely in conformance with the Notes Indentures (as and to the extent applicable), Consenting Noteholders shall be deemed to have automatically contributed to the Alpha Noteholder Claims Trust all of their Preserved Noteholder Claims in exchange for beneficial interests therein simultaneously issued to each Consenting Noteholder, *pro rata*, in proportion to the amount of the Notes Claims held at such time by such

Consenting Noteholder.  Thereafter, the Alpha Noteholder Claims Trust, acting through the Alpha

Noteholder Claims Trust Trustee under the oversight of the Alpha Noteholder Claims Trust

Oversight Committee, shall have the exclusive right to investigate, prosecute, settle and resolve

any of the Preserved Noteholder Claims which constitute Alpha Noteholder Claims Trust Assets.

Without limitation of the generality of the foregoing, the Preserved Noteholder Claims contributed

to the Alpha Noteholder Claims Trust as set forth above shall include such Preserved Noteholder

Claims and any and all privileges (including, but not limited to, attorney client privileges)

belonging to the Consenting Noteholders in respect of the Preserved Noteholder Claims being

contributed.  On the Effective Date, the Consenting Noteholders shall be deemed to have assigned

any of their applicable privileges relating to the Preserved Indenture and Noteholder Claims to the

Alpha Noteholder Claims Trust.  For the avoidance of doubt, Claims and Causes of Action held

and assertable (i) solely by Non-Consenting Noteholders or (ii) by the Notes Indenture Trustee on

behalf of all holders of Notes Claims, (A) shall not be contributed to the Alpha Noteholder Claims

Trust, (B) shall remain the sole property of such Non-Consenting Noteholders or the Notes

Indenture Trustee for the benefit of all holders of Notes Claims, as applicable, and (C) except to

the extent expressly set forth in the Plan, shall not be released pursuant thereto.

   47. For the avoidance of doubt, no Assets of the Estate (including Sale Consideration)

shall be transferred to the Alpha Noteholder Claims Trust or become Alpha Noteholder Claims

Trust Assets, other than the Plan Distributions from the Liquidating Trust Assets that are made to

holders of the Notes, which may be transferred at such holder's direction.

   48. The Alpha Noteholder Claims Trust, as set forth in the Alpha Noteholder Claims

Trust Agreement and consistent with the Plan, and all other ancillary documents, terms and

conditions thereof, and all transactions contemplated thereby, including any and all actions to be

taken, undertakings to be made, and obligations to be incurred are hereby authorized and approved. The failure to specifically reference any particular provision set forth in the Plan or Alpha Noteholder Claims Trust Agreement in this Order shall not diminish or impair the efficacy of such provision, it being the intent of the Court that the Alpha Noteholder Claims Trust Agreement and each and every provision, term and condition thereof be authorized and approved in their entirety. Notwithstanding anything in the Plan to the contrary, the Debtors shall have no obligation to provide any funds or financing to the Alpha Noteholder Claims Trust and under no circumstances will the costs or expenses of the Alpha Noteholder Claims Trust be paid or reimbursed by the Debtors.

49.     After the Effective Date, the Alpha Noteholder Claims Trust Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof without further order of this Court.

**H.     Plan Distributions**

50.     The provisions of Article VII of the Plan regarding distributions from (i) the Liquidating Trust to the Liquidating Trust Beneficiaries in accordance with the Plan and the Liquidating Trust Agreement and (ii) the Debtors' Applicable Reserves or available Cash in accordance with the Plan and the Wind-Down Budget to holders of the AFPST Claims, in each case, are specifically approved in all respects, are incorporated herein, and are so ordered.

51.     On the Effective Date, the Liquidating Trustee shall distribute beneficial interests in the Liquidating Trust to the holders of Funded Debt Claims, Notes Claims, and any Other Unsecured Claims that constitute Allowed Claims as of such date and shall make further distributions of such beneficial interests to holders of any Other Unsecured Claims that have not become Allowed Claims as of the Effective Date, promptly after any of such Other Unsecured Claims have been Allowed.

52.     All distributions on account of (i) the Allowed Professional Fee Claims, Allowed AFPST Claims, and Wind-Down Amounts as provided under the Plan and the Wind-Down Budget pursuant to Article IV.I and (ii) Preserved Noteholder Claims which constitute Alpha Noteholder Claims Trust Assets, pursuant to Article VI of the Plan, in each case, are specifically approved in all respects, are incorporated herein, and are so ordered.   For the avoidance of doubt, all distributions from the Liquidating Trust in respect of the Notes Claims shall be made to the Notes Indenture Trustee who shall thereafter, as a distribution agent under the Plan and subject to the Notes Indenture Trustee's Charging Lien, make distributions to the holders of the Notes in accordance with the applicable provisions of the Notes Indentures, respectively, and through the facilities of DTC.

## I.    Exemption from Registration

53.     The beneficial interests (i) in the Liquidating Trust to be issued to the Liquidating Trust Beneficiaries and (ii) in the Alpha Noteholder Claims Trust to be issued to the Alpha Noteholder Claims Trust Beneficiaries, in each case, under the Plan are not intended to be "securities" under applicable laws, but if such interests constitute securities, the issuance of such securities under the Plan shall be exempt pursuant to section 1145 of the Bankruptcy Code from the registration requirements of Section 5 of the Securities Act and any other applicable securities laws requiring registration of securities.

54.     Moreover, if the beneficial interests in the Liquidating Trust or the Alpha Noteholder Claims Trust constitute securities, any and all such beneficial interests that constitute securities will be freely tradable under the Securities Act by the recipients thereof, subject to: (a) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in Section 2(a)(11) of the Securities Act, and the rules and regulations of the SEC, if any, applicable at the time of any future transfer of such beneficial interests and (b) the restrictions,

if any, on the transferability of such beneficial interests in the Liquidating Trust Agreement or the Alpha Noteholder Claims Trust Agreement, as applicable.

55.     No Person or Entity (including, for the avoidance of doubt, DTC) shall be entitled to require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether the beneficial interests (i) in the Liquidating Trust to be issued to the Liquidating Trust Beneficiaries and (ii) in the Alpha Noteholder Claims Trust to be issued to the Alpha Noteholder Claims Trust Beneficiaries, in each case, are exempt from registration under the Securities Act and/or eligible for DTC book-entry delivery, settlement, and depository services. All such Persons and Entities including DTC shall be required to accept and conclusively rely upon the Plan and this Confirmation Order in lieu of a legal opinion regarding whether such beneficial interests are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.  The beneficial interests in the Liquidating Trust or the Alpha Noteholder Claims Trust may be made eligible for clearance and trading through the book-entry facilities of DTC, and the Debtors shall not be required to provide any further evidence other than the Plan or Confirmation Order with respect to the treatment of such beneficial interests. Notwithstanding the foregoing, consistent with Article IV.H. of the Plan and the Alpha Noteholder Claims Trust, the Notes Indenture Trustee may require an opinion of counsel before the Notes Indenture Trustee acts or refrains from acting in response to any request from the Alpha Noteholder Claims Trust Trustee or any holder of a Notes Claim that the Notes Indenture Trustee act or refrain from acting.

**J.     Releases, Injunction, Exculpation, and Related Provisions Under the Plan**

56.     The following provisions set forth in Article X of the Plan are hereby approved and authorized in their entirety and shall be effective and binding immediately on the Effective Date without further order or action by this Bankruptcy Court, any of the parties subject to such

provisions, or any other entity: (a) Debtor Releases (Article X.A); (b) Third Party Releases (Article X.B); (c) Exculpation Provision (Article X.C); (d) Injunction Provision (Article X.D); and (e) ALM Discharge (Article X.F).

**K.    Certain Matters Concerning Claims**

57.    <u>Discharge and Release of Claims; Satisfaction of Claims</u>.  Subject to the occurrence of the Effective Date, this Order shall constitute a judicial determination of the ALM Discharge.

58.    Subject to the occurrence of the Effective Date, as of the Effective Date, except as provided in the Plan, the distributions and rights afforded under the Plan and the treatment of Claims and Equity Interests under the Plan shall be in exchange for, and in complete satisfaction of, all Claims against the Debtors, and in satisfaction of all Equity Interests and the termination of Equity Interests in the Debtors (except for ALM).  Except as otherwise specifically provided in the Plan, as of the Effective Date any interest accrued on Claims against the Debtors from and after the Petition Date shall be cancelled.  Accordingly, except as otherwise provided in the Plan or this Order, confirmation of the Plan shall, as of the Effective Date, satisfy, terminate, and cancel all Claims against the Debtors and Equity Interests and other rights of equity security holders in the Debtors (other than ALM).

59.    Subject to the occurrence of the Effective Date, as of the Effective Date, except as provided in the Plan, all Persons shall be precluded from asserting against the Debtors, the Liquidating Trustee or their respective successors or property, any other or further Claims, debts, rights, Causes of Action, liabilities or Equity Interests based upon any act, omission, transaction or other activity of any kind or nature that occurred prior to the Petition Date.

60.    No Person holding a Claim may receive any payment from, or seek recourse or recovery against, any Assets that are to be distributed under the Plan, other than Assets required to be distributed to that Person under the Plan.

61.    <u>Administrative Claims Bar Date</u>.  The holder of an Administrative Claim, other than (i) a Professional Fee Claim, (ii) a DIP Claim, or (iii) an Administrative Claim that has been Allowed on or before the Effective Date, must file with this Court and serve on the Debtors and the Office of the United States Trustee (the "**U.S. Trustee**"), notice of such Administrative Claim within thirty (30) days following the Effective Date.  Such notice of Administrative Claim must include at a minimum: (i) the name of the holder of the Administrative Claim; (ii) the amount of the Administrative Claim; and (iii) the basis of the Administrative Claim.  **THE FAILURE TO FILE AND SERVE SUCH NOTICE OF ADMINISTRATIVE CLAIM TIMELY AND PROPERLY SHALL RESULT IN SUCH CLAIM BEING FOREVER BARRED AND DISCHARGED.  IF FOR ANY REASON ANY SUCH ADMINISTRATIVE CLAIM IS INCAPABLE OF BEING FOREVER BARRED AND DISCHARGED, THEN THE HOLDER OF SUCH CLAIM SHALL IN NO EVENT HAVE RECOURSE TO ANY PROPERTY TO BE DISTRIBUTED PURSUANT TO THE PLAN**

62.    <u>Professional Fee Claims</u>.  Each Professional who holds or asserts a Professional Fee Claim shall file with this Court, and serve on all parties required to receive notice, a Fee Application within forty-five (45) days after the Effective Date.  **THE FAILURE TO TIMELY FILE AND SERVE SUCH FEE APPLICATION SHALL RESULT IN THE PROFESSIONAL FEE CLAIM BEING FOREVER BARRED AND DISCHARGED.  IF FOR ANY REASON ANY SUCH PROFESSIONAL FEE CLAIM IS INCAPABLE OF BEING FOREVER BARRED AND DISCHARGED, THEN THE HOLDER OF SUCH CLAIM SHALL IN NO EVENT HAVE RECOURSE TO ANY PROPERTY TO BE DISTRIBUTED PURSUANT TO THE PLAN**

63.    <u>Professional Fee Escrow</u>.  As soon as reasonably practicable after the Confirmation

Date and no later than the Effective Date, the Debtors are hereby authorized to and shall establish the Professional Fee Escrow.  The Debtors shall fund the Professional Fee Escrow with Cash equal to the Professional Fee Escrow Amount. The Professional Fee Escrow shall be funded no later than the Effective Date and maintained in trust for the Professionals and shall not be considered property of the Debtors' Estates or the Liquidating Trust; *provided that* after all Allowed Professional Fee Claims have been paid in full and there are no Disputed Professional Fee Claims, any remaining Cash in such reserve shall be transferred to the Liquidating Trust Distribution Account unless the Debtors obtain approval from the Bankruptcy Court for such amounts to be transferred to the Wind-Down Reserve.  Notwithstanding any other order entered in these Chapter 11 Cases, Prime Clerk LLC is authorized to act as escrow or disbursing agent for purposes of the Professional Fee Escrow.

64.     Pursuant to the parties' agreement, the Professional Fees to be paid to the Debtors' and Ad Hoc Groups' respective Professionals (*i.e.*, (i) in the case of the Debtors, White & Case, Alix Partners, Rothschild, and Skadden Arps, and (ii) in the case of the Ad Hoc Group, Brown Rudnick and Houlihan Lokey/Blink) will be reduced by a total of $500,000 in the aggregate through a pro rata reduction for each such Professional (based on the total fees of each such Professional incurred during these Chapter 11 Cases as the numerator and the total fees of all such Professionals incurred during these Chapter 11 Cases in the aggregate as the denominator (with the numerator and denominator determined as of the Effective Date with any fees that have not been formally submitted or filed, as reasonably estimated by each such Professional))

65.     Ad Hoc Group Fees and Expenses.  On the Effective Date (or following the expiration of the applicable AHG Professional Fee Review Period, if the Effective Date occurs during an AHG Professional Fee Review Period (as defined below)), the Debtors shall pay in Cash

all unpaid reasonable and documented Ad Hoc Group Fees and Expenses (without duplication for any fees and expenses paid pursuant to the Final DIP Order) and the Ad Hoc Group, and their respective advisors and professionals shall not be required to comply with the U.S. Trustee fee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court, but the Ad Hoc Group and their advisors and professionals shall provide reasonably detailed summary invoices (redacted if necessary for privileged, confidential or otherwise sensitive information, as to those invoices provided to any party other than the U.S. Trustee) for fees permitted pursuant to the Plan to the Office of the U.S. Trustee and the Debtors.  Within the later of the Effective Date or ten (10) Business Days of presentment of such statements, if no written objections to the reasonableness of the fees and expenses charged in any such invoice (or portion thereof) is made (such 10-Business Day period, the "**AHG Professional Fee Review Period**"), the Debtors shall pay in cash all such fees and expenses of the Ad Hoc Group and their advisors and professionals promptly, and in any event within five (5) calendar days after the expiration of the AHG Professional Fee Review Period (or shall make such payment on the Effective Date, if the Effective Date has not occurred prior to the expiration of such period), without the need for further application to or order of the Court.  Any objection to the payment of such fees or expenses shall be made only on the basis of "reasonableness," and shall specify in writing the amount of the contested fees and expenses and the detailed basis for such objection. To the extent an objection only contests a portion of an invoice, the undisputed portion thereof shall be promptly paid and in any event within three (3) Business Days following the end of the AHG Professional Fee Review Period (or be paid on the Effective Date, if the Effective Date has not occurred prior to the expiration of such period), without the need for further application to or order of the Court. If any such objection to payment

of an invoice (or any portion thereof) is not otherwise resolved between the objecting party and the issuer of the invoice, either party may submit such dispute to the Court for a determination as to the reasonableness of the relevant disputed fees and expenses set forth in the invoice. This Court shall resolve any dispute as to the reasonableness of any fees and expenses.  For the avoidance of doubt, if any Ad Hoc Group Fees and Expenses which have been paid are later determined to be unreasonable in accordance with the procedure set forth in this Paragraph, such Ad Hoc Group Fees and Expenses shall be subject to disgorgement to the extent determined to be unreasonable.

66.    The Ad Hoc Group Settlement with respect to the Ad Hoc Group Fees and Expenses against the Debtors (i)(a) is an essential element of the resolution of these Chapter 11 Cases and an integral component of the Ad Hoc Group Settlement which resulted in improved treatment for the Liquidating Trust Beneficiaries; (b) a sound exercise of the Debtors' business judgment; (c) in the best interests of the Debtors, their Estates, holders of Claims and Equity Interests; and (d) fair, equitable, and reasonable and (ii) is hereby approved in full pursuant to, inter alia, sections 363(b), 365, 1123(b)(6), and 1129(a)(4) of the Bankruptcy Code and Bankruptcy Rule 9019 and shall be the final settlement of such Claims.

67.    <u>Professionals' Fees and Expenses</u>.  Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code or the Interim Compensation Order in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Court.

68.    The Debtors and the Ad Hoc Group shall agree on a mutually acceptable procedure to review Colombian VAT payments made or to be made in respect to the Debtors' Professional Fee Claims.

69.    <u>Notes Indenture Trustee Fees and Expenses</u>.  On the Effective Date, the Debtors (other than ALM and AlphaDebit) shall pay in Cash the Notes Indenture Trustee Fees and Expenses as set forth in the Plan (including Article II.B.5), documented by summary invoice without any requirement for (1) application to or approval of this Court, or (2) the provision of itemized time details.  The Debtors (other than ALM and AlphaDebit) shall provide counsel to the Notes Indenture Trustee with five (5) Business Days advance notice of the Effective Date, and the Notes Indenture Trustee shall provide summary invoices to the Debtors two (2) Business Days prior to the Effective Date (subject to redaction to preserve attorney client privilege).

70.    The Ad Hoc Group Settlement with respect to the Notes Indenture Trustee Fees and Expenses against the Debtors (i)(a) is an essential element of the resolution of these Chapter 11 Cases and an integral component of the Ad Hoc Group Settlement which resulted in improved treatment for the Liquidating Trust Beneficiaries; (b) a sound exercise of the Debtors' business judgment; (c) in the best interests of the Debtors, their Estates, holders of Claims and Equity Interests; and (d) fair, equitable, and reasonable and (ii) is hereby approved in full pursuant to, inter alia, sections 363(b), 365, 1123(b)(6), and 1129(a)(4) of the Bankruptcy Code and Bankruptcy Rule 9019 and shall be the final settlement of such Claims.

71.    For the avoidance of doubt, nothing set forth in the Plan affects the Notes Indenture Trustee's rights to exercise its Charging Lien against distributions on account of the Notes Claims with respect to any unpaid Notes Indenture Trustee Fees and Expenses, and all such abilities are expressly preserved.

**L.    Certain Executory Contract and Unexpired Lease Matters**

72.    The Executory Contract and Unexpired Lease provisions set forth in Article IX of the Plan, and the assumptions, assumptions and assignments, or rejections described in Article IX of the Plan, are approved.

73.    This Order shall constitute an order of the Court, pursuant to section 365 of the Bankruptcy Code, as of and conditioned on the occurrence of the Effective Date, approving (i) the assumption and assignment of Executory Contracts and Unexpired Leases specified in the Assumed Executory Contracts and Unexpired Leases Schedule (including, for the avoidance of doubt, all amendments thereto, subject to a Consultation Right of the Ad Hoc Group), pursuant to Article IX.A.3 of the Plan and sections 365(a), (b) and (f) of the Bankruptcy Code; and (ii) the rejection of the Debtors' other Executory Contracts and Unexpired Leases in accordance with Article IX.A.2 of the Plan and section 365(a) of the Bankruptcy Code.

74.    <u>Rejection of Executory Contracts and Unexpired Leases</u>.  For the avoidance of doubt, on the Effective Date, subject to a Consultation Right for the Ad Hoc Group, all Executory Contracts and Unexpired Leases of the Debtors shall be rejected pursuant to the provisions of section 365 of the Bankruptcy Code, *except*: (i) any Executory Contracts and Unexpired Leases that are the subject of separate motions to reject, assume or assume and assign filed pursuant to section 365 of the Bankruptcy Code by the Debtors before the entry of this Order; (ii) contracts and leases listed in the Assumed Executory Contracts and Unexpired Leases Schedule, filed as an exhibit to the Plan Supplement, and any supplements thereto; (iii) all Executory Contracts and Unexpired Leases assumed or assumed and assigned by order of this Court entered before the Effective Date and not subsequently rejected pursuant to an order of this Court; (iv) any Executory Contract or Unexpired Lease that is the subject of a dispute over the amount or manner of cure pursuant to Article IX.B of the Plan and for which the Debtors make a motion to reject such contract or lease based upon the existence of such dispute filed at any time; (v) any guaranty or similar agreement executed by a third party which guarantees repayment or performance of an obligation owed to the Debtors or to indemnify the Debtors; and (vi) agreements with third parties

regarding preservation of the confidentiality of documents produced by the Debtors.  Any order entered post-confirmation by this Court, after notice and a hearing, authorizing the rejection of an Executory Contract or Unexpired Lease shall cause such rejection to be a prepetition breach under sections 365(g) and 502(g) of the Bankruptcy Code, as if such relief was granted and such order was entered pre-confirmation.  The Debtors have reserved the right (subject to a Consultation Right for the Ad Hoc Group) to amend the Assumed Executory Contracts and Unexpired Leases Schedule.

75.    Exclusion of a contract, lease or other agreement from the exceptions from Article IX.A.1 shall constitute adequate and sufficient notice (i) of any Claims arising thereunder or related thereto shall be treated as either a Foreign Convenience Claim or an Other Unsecured Claim under the Plan, and (ii) the Debtors are no longer bound by, or otherwise obligated to perform, any such obligations, transactions, or undertakings relating thereto or arising thereunder.  The Plan shall constitute a motion to reject such Executory Contracts and Unexpired Leases rejected pursuant to Article IX.A.2 of the Plan, and the Debtors shall have no liability thereunder except as is specifically provided in the Plan.

76.    <u>Assumption and Assignment of Executory Contracts and Unexpired Leases</u>.  The Plan shall constitute a motion to assume or assume and assign such Executory Contracts and Unexpired Leases as set forth in the Assumed Executory Contracts and Unexpired Leases Schedule filed as an exhibit to the Plan Supplement or as otherwise designated (subject to a Consultation Right of the Ad Hoc Group) as being assumed or assumed and assigned in Article IX.A.1 and the Debtors shall have no liability thereunder for any breach of such assumed and assigned Executory Contract or lease occurring after such assignment pursuant to section 365(k) of the Bankruptcy Code, *except* as is specifically provided in the Plan.

77.     Any non-Debtor counterparty to an agreement listed on the Assumed Executory Contracts and Unexpired Leases Schedule or otherwise designated (subject to a Consultation Right of the Ad Hoc Group) as being assumed or assumed and assigned in Article IX.A.1 who disputed the assumption or assignment of an Executory Contract or Unexpired Lease or the cure amount listed therein, must have filed with the Bankruptcy Court, and have served upon the Debtors and the Liquidating Trustee (if appointed), a written objection to the assumption or assumption and assignment, which objection shall set forth the basis for the dispute on the later of (1) February 25, 2022, at 4:00 p.m. (Prevailing Eastern Time) (for Executory Contracts and Unexpired Leases that were included on the Assumed Executory Contracts and Unexpired Leases Schedule filed on February 11, 2022); (2) only with respect to the Executory Contracts or Unexpired Leases that were added to the Assumed Executory Contracts and Unexpired Leases Schedule on February 25, 2022, March 11, 2022; or (3) with respect to any Executory Contract or Unexpired Lease that is added to the Assumed Executory Contracts and Unexpired Leases Schedule after February 25, 2022, the date that is fourteen (14) days following the filing of the relevant supplement to the Assumed Executory Contracts and Unexpired Leases Schedule. **THE FAILURE TO TIMELY OBJECT SHALL BE DEEMED A WAIVER OF ANY AND ALL OBJECTIONS TO THE ASSUMPTION OR ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES AS SET FORTH IN THE ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES SCHEDULE FILED AS SCHEDULE 1 OF THE ASSUMPTION NOTICE OR AS OTHERWISE DESIGNATED AS BEING ASSUMED OR ASSUMED AND ASSIGNED IN ARTICLE IX.A.1 OR ARTICLE IX.A.3 OF THE PLAN.**

78.     <u>Claims Arising from Rejection, Expiration, or Termination</u>.  Claims created by the

rejection of Executory Contracts and Unexpired Leases or the expiration or termination of any Executory Contract or Unexpired Lease prior to the Confirmation Date must be filed with the Bankruptcy Court and served on (i) the Debtors, (ii) the Ad Hoc Group, and (iii) the Liquidating Trustee (a) in the case of an Executory Contract or Unexpired Lease rejected by the Debtors, subject to a Consultation Right for the Ad Hoc Group, prior to the Confirmation Date, in accordance with the General Bar Date Notice, or (b) in the case of an Executory Contract or Unexpired Lease that (1) was terminated or expired by its terms prior to the Confirmation Date, or (2) is rejected pursuant to Article IX of the Plan, no later than thirty (30) days after the Confirmation Date. **ANY SUCH CLAIMS FOR WHICH A PROOF OF CLAIM IS NOT FILED AND SERVED BY THE DEADLINES SET FORTH IN THE GENERAL BAR DATE NOTICE OR ARTICLE IX.C OF THE PLAN, AS APPLICABLE, WILL BE FOREVER BARRED FROM ASSERTION AND DISCHARGED AND SHALL NOT BE ENFORCEABLE AGAINST THE DEBTORS, THEIR ESTATES, OR THEIR ASSETS. IF FOR ANY REASON ANY SUCH CLAIMS ARE INCAPABLE OF BEING FOREVER BARRED AND DISCHARGED, THEN THE HOLDERS OF SUCH CLAIMS SHALL IN NO EVENT HAVE RECOURSE TO ANY PROPERTY TO BE DISTRIBUTED PURSUANT TO THE PLAN.**

79.     Unless otherwise ordered by this Court, all such Claims that are timely filed as provided in the Plan shall be treated as either a Foreign Convenience Claim or an Other Unsecured Claim under the Plan subject to objection by the Debtors or the Liquidating Trustee, respectively.

### M.     Compromises and Settlements

80.     The compromises and settlements of all Claims, Equity Interests, and controversies set forth in the Plan and this Order, including the Ad Hoc Group Settlement (which, for the avoidance of doubt, includes the Ad Hoc Group Fees and Expenses and Notes Indenture Trustee

Fees and Expenses as provided for in the Plan), are hereby approved, pursuant to sections 363(b), 365, 1123(b)(6) and 1129(a)(4) of the Bankruptcy Code and Bankruptcy Rule 9019, and will be effective immediately and binding on all parties in interest on the Effective Date.  Subject to Article VII of the Plan, all distributions made to holders of Allowed Claims and Allowed Equity Interests in any Class are intended to be and shall be final.  The compromises or settlements in the Plan represent a sound exercise of the Debtors' business judgment, are fair, equitable, and within the range of reasonableness, and are in the best interests of the Debtors, their Estates, and holders of Claims and Equity Interests.

**N.**    **Setoff Rights**

81.    In the event that any Debtor, as applicable, has a Claim of any nature whatsoever against the holder of a AFPST Claim, then such Debtor, as applicable, may, but is not required to, setoff against the AFPST Claim (and any payments or other Plan Distributions to be made in respect of such Claim hereunder) such Debtor's Claim against such holder, subject to the provisions of sections 553, 556 and 560 of the Bankruptcy Code.  In the event that the Liquidating Trustee has or is transferred a Claim of any nature whatsoever against the holder of an Other Unsecured Claim, Notes Claim or a Funded Debt Claim, then the Liquidating Trustee may, but is not required to, setoff against the Other Unsecured Claim, Notes Claim or Funded Debt Claim, as applicable, (and any payments or other Plan Distributions to be made in respect of such Claim hereunder) such Liquidating Trustee's Claim against such holder, subject to the provisions of sections 553, 556 and 560 of the Bankruptcy Code.

82.    Neither the failure to setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release of any Claims that any Debtor or the Liquidating Trustee, as applicable, may have against the holder of any Claim.

**O.    28 U.S.C. § 1930 Fees**

83.    <u>Payment of United States Trustee Quarterly Fees</u>.    All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code ("Quarterly Fees") prior to the Effective Date shall be paid by the Debtors on the Effective Date.  The Post Effective Date Debtors shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR.  After the Effective Date, the Liquidating Trustee and each of the Debtors shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due.  Each and every one of the Debtors and the Liquidating Trustee shall remain obligated to pay Quarterly Fees to the Office of the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed or converted to a case under Chapter 7 of the Bankruptcy Code.  The Debtors and Liquidating Trustee have agreed, and this Court orders, that Quarterly Fees shall be paid by the Liquidating Trustee after the Debtors have given five (5) Business Days notice to the Liquidating Trustee and the U.S. Trustee that its cases should be closed and the Liquidating Trustee requests that it remain open.  The U.S. Trustee reserves all rights with respect to the payment of Quarterly Fees after the Debtors gives such notice to the Liquidating Trustee.  The U.S. Trustee shall not be required to file any Administrative Claim in the cases and shall not be treated as providing any release under the Plan.

**P.    Exemption from Transfer Taxes**

84.    Pursuant to section 1146 of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities under or in connection with the Plan, including the creation of any mortgage, deed of trust, lien, pledge or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use or other similar tax.  Transfers made under the Plan include, without

limitation, any transfer, sale, or exchange of the assets that is the subject of a motion or notice pursuant to section 363 of the Bankruptcy Code filed by the Debtors before the Effective Date regardless of the date the transaction is approved by the Court or the date such transfer, sale, or exchange closes.  To effectuate the terms of Article XIII.D of the Plan, this Court may enter any order necessary or appropriate to implement such provision.

> **Q.    Notice of Entry of this Order and Relevant Dates**

85.    In accordance with Bankruptcy Rules 2002 and 3020(c), the Debtors shall cause to be served by first class mail: (i) a notice of the entry of this Order and deadline for filing rejection damage Claims, substantially in the form attached hereto as **Exhibit B** (the "**Confirmation Notice**") and (ii) a notice of occurrence of the Effective Date and deadline for filing notice of Administrative Claims, substantially in the form attached hereto as **Exhibit C** (the "**Effective Date Notice**"), upon (a) all parties listed in the creditor matrix maintained by Prime Clerk, and (b) such additional persons and entities served with the Confirmation Hearing Notice, no later than three (3) business days after the Effective Date.

86.    The Debtors shall cause the Confirmation Notice and Effective Date Notice to be published once in *The New York Times* and a Spanish translation thereof published once in *El Tiempo* in Colombia within seven (7) Business Days after the Effective Date, or as soon as practicable thereafter.  Additionally, the Debtors will post the Confirmation Notice and Effective Date Notice in English and Spanish electronically at https://cases.primeclerk.com/alphalatam.

87.    Mailing of the Confirmation Notice and Effective Date Notice in the time and manner set forth in this section will be good, adequate, and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c). No further or other notice is necessary.

88.    The Confirmation Notice will constitute sufficient notice of the entry of this Order

to filing and recording officers and will be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law.

### R.    Conditions Precedent to the Occurrence of the Effective Date

89.    Entry of this Order shall satisfy the applicable condition precedent to the occurrence of the Effective Date as set forth in Article XI.B.1 of the Plan; *provided* that this Order shall have become a Final Order that has not been stayed, modified, or vacated on appeal.

### S.    Waiver of Conditions; Consents Required

90.    The Debtors, with the reasonable consent of an Ad Hoc Group Majority, may waive any one or more of the conditions set forth in Article XI.A or Article XI.B of the Plan, with notice to the United States Trustee, but, without notice or order of the Bankruptcy Court and without notice to any other parties in interest; *provided that*, (i) the conditions set forth in Article XI.B(3) of the Plan shall not be waivable without (A) the prior written consent of the Notes Indenture Trustee as to the Notes Indenture Trustee Fees and Expenses or the Ad Hoc Group as to the Ad Hoc Group Fees and Expenses or (B) order of the Bankruptcy Court; (ii) the condition set forth in Article XI.B(8) shall not be waivable except with the consent of the Ad Hoc Group Majority; and (iii) the condition set forth in Article XI.B(5) shall not be waivable to the extent relating to an order, decision, or injunction imposed by Colombian authorities in the framework of the administrative control, measure and/or judicial liquidation process with respect to any Debtor organized in Colombia that is not waivable.

### T.    Cooperation

91.    Upon the Effective Date, the Debtors, to the extent still in existence, agree to reasonably cooperate with the Liquidating Trust with respect to the investigation and/or prosecution of any Preserved Estate Claims (but not any Preserved Estate Claim (if any) that may be asserted against the Debtors' current and/or former officers, directors, liquidators or

employees), provided however that such cooperation does not (and will not) violate Colombian law or any resolution or instruction from the *Superintendencia de Sociedades* of Colombia or any other competent authority in Colombia.  Such reasonable cooperation shall be at the cost and expense of the Liquidating Trust and limited to (i) producing documents without the need for service of a formal discovery request, (ii) providing reasonable access to employees and, as applicable, former employees to be interviewed, and prepared as a deposition or trial witness; and (iii) retaining for six months or, unless the Liquidating Trust requests prior to the expiration of such six-month period, then transferring all books, records and other documents relating to the Preserved Estate Claims identified by the Liquidating Trust (subject to the provisions in the Plan) to the Liquidating Trust and applicable law.

92.    Upon the Effective Date, the Liquidating Trust and the Alpha Noteholder Claims Trust shall fully cooperate with each other with respect to their respective investigation and/or prosecution of any Preserved Estate Claims and Preserved Noteholder Claims.  Such cooperation shall include, but not be limited to, sharing and/or exchanging documents obtained in discovery and such other forms of mutual cooperation that, in the sole discretion of the Trustee and the trustee of the Alpha Noteholder Claims Trust, they deem appropriate and in the best interest of the respective Trust. Such cooperation shall be subject to all available common interest protection and/or privileges applicable to the foregoing investigation and/or prosecution and, without limitation of the generality of the foregoing, to the extent he determines that a common interest exists between them, the Liquidating Trustee may share any Privileged Material with the Alpha Latam Noteholders Claim Trust.

93.    Upon the Effective Date, the Special Committee, the proposed Liquidating Trustee, and the proposed Alpha Noteholder Claims Trust Trustee will work together in good faith to

reasonably provide each other with (x) facts discovered in the course of the Special Committee's investigation and any ensuing investigation conducted by the Liquidating Trust or the Alpha Noteholder Claims Trust and, (y) to the extent that a common interest exists between the Special Committee, on the one hand, and the Liquidating Trust and/or the Alpha Noteholder Claims Trust, on the other hand, privileged information relating to the Special Committee's investigation and any ensuing investigation conducted by the Liquidating Trust or the Alpha Noteholder Claims Trust, in each case to the extent relevant to the Claims and Causes of Action received by the Liquidating Trust and/or the Alpha Noteholder Claims Trust under the Plan.

### U.    Miscellaneous

94.    Notwithstanding any language to the contrary contained in the Disclosure Statement, Plan and/or this Order, no provision of the Plan or this Order shall (i) preclude the United States Securities and Exchange Commission ("**SEC**") from enforcing its police or regulatory powers or, (ii) enjoin, limit, impair or delay the SEC from commencing or continuing any claims, causes of action, proceedings or investigations against any non-debtor person or non-debtor entity in any forum.

95.    Nothing in this Order, Plan, or any Plan Documents shall alter, waive, or otherwise modify any right of the Liquidating Trustee, Liquidating Trust Beneficiaries, or any other party-in-interest to contest: (i) the standing of any party to investigate, pursue, or settle Preserved Noteholder Claims or any other Claims of the Alpha Noteholder Claims Trust, including, without limitation, to the extent such Claims might constitute or might have constituted (x) Liquidating Trust Assets or (y) Claims or Causes of Action of the Debtors' Estates; or (ii) jurisdiction or constitutional authority in connection with such Claims or Causes of Action.

96.    Notwithstanding anything to the contrary herein or in the Plan, Arena Investors LP ("**Arena**") shall be deemed to have not granted, shall not be bound by, and shall be deemed to

have effectively opted out of the releases set forth in Article X.B of the Plan and therefore shall not constitute a Releasing Party under the Plan. For the avoidance of doubt, nothing in the Plan or this Order shall release any of Arena's claims against any party other than the Debtors arising from or related to bonds relating to (i) the 2022 Notes Indenture and (ii) the 2025 Notes Indenture (collectively, the "**Arena Third Party Claims**"). Such Arena Third Party Claims against any party other than the Debtors may include, but are not limited to a right to payment, breach of contract, negligence, fraud including fraudulent inducement, contribution, indemnification, and any claim for reimbursement. Further, in the event that Arena asserts an Arena Third Party Claim against any party other than the Debtors, such claim(s) shall not be subject to the jurisdiction of the Bankruptcy Court.

97. Notwithstanding anything contrary in the Plan, the amount of the Notes Indenture Trustee Reserve shall be $550,000.

98. Except as otherwise may be provided in the Plan or herein, notice of all subsequent pleadings in these Chapter 11 Cases after the Effective Date shall be limited to the following parties: (i) the Debtors and their counsel;[10] (ii) the U.S. Trustee; (iii) counsel to the Ad Hoc Group; (iv) counsel to the Notes Indenture Trustee, Reed Smith LLP (Kurt F. Gwynne and Mark W. Eckard); (v) any party that has filed a renewed request after the Effective Date to receive documents pursuant to Bankruptcy Rule 2002; and (vi) any party known to be directly affected by the relief sought.

---

[10] Notice to the Debtors' counsel must be addressed to the following recipients : (i) *White & Case LLP*, 1221 Avenue of the Americas, New York, NY 10020 (Attn: Philip M. Abelson at philip.abelson@whitecase.com, John J. Ramirez at john.ramirez@whitecase.com, and Brett L. Bakemeyer at brett.bakemeyer@whitecase.com); (ii) *Richards, Layton & Finger, P.A.*, One Rodney Square, 920 North King Street Wilmington, DE 19801 (Attn: John H. Knight at knight@rlf.com, Brendan J. Schlauch at schlauch@rlf.com, and J. Zachary Noble at noble@rlf.com); and (iii) *Philippi, Prietocarrizosa Ferrero DU & Uría*, Carrera 9 # 74 08 Of 105, Bogotá D.C., Colombia (Attn: Hernando Padilla at hernando.padilla@ppulegal.com and Paula Buriticá at paula.buritica@ppulegal.com).

99.     Notwithstanding any applicable Bankruptcy Rule, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

100.    This Court shall, and hereby does, retain exclusive jurisdiction with respect to all matters arising from or in relation to the implementation, interpretation, and enforcement of this Order and all matters arising in and under, and related to, these Chapter 11 Cases, as set forth in Article XII of the Plan, or pursuant to sections 105(a) and 1142 of the Bankruptcy Code, except as otherwise provided in the Plan.

101.    This Order is intended to be a final order, and the period within which an appeal must be filed commences upon the entry hereof

**Dated: March 16th, 2022**
**Wilmington, Delaware**

**J. KATE STICKLES**
**UNITED STATES BANKRUPTCY JUDGE**